RICHARD S. WILLIAMS, plaintiff in error, *v.* JAMES E. WALDO *et al.*, defendants in error.

*Error to Morgan.*

Where, after a decree of foreclosure of a mortgage had been entered, and the mortgaged premises directed to be sold, and a deed to be executed to the purchaser; the

(1) 4 Johns. Ch. R. 610.

Williams *v.* Waldo *et al.*

legislature passed an act requiring all property sold upon foreclosure of mortgage, to be appraised, and prohibited its sale unless it would sell for two-thirds its appraised value, and authorizing the mortgagor to redeem the same at any time within one year from the sale: *Held,* that the act was constitutional, and a sale without such valuation was erroneous; and that a deed could not be executed to the purchaser, until the expiration of the right to redeem.

All judgments and decrees are taken subject to such changes as the law making power may adopt for the purpose of enforcing them.

The doctrine that the remedy provided by law to enforce a contract, is a part of the contract, and incorporated into it, has been long since exploded. The true doctrine is, that remedies afforded by law to enforce a right or obligation, are no part of the same.

A decree in chancery, or a judgment at law, is not a contract.

*Semble,* That a court of chancery may, at any time before sale, modify or change the terms and conditions of the sale of property ordered to be sold by such court, on foreclosure of mortgage, as equity and good conscience may require.

THIS cause was heard in the Court below, before the Hon. Samuel D. Lockwood. The facts appear in the opinion of the Court.

The cause was submitted on briefs.

H. B. McCLURE, for the plaintiff in error, contended,

1. "That the decree was a vested right; that it was a chattel, which, with all its incidents and provisions, would go to his administrator, was devisable, &c. Blac. Com. titles Personal Property, Chose in Action, Acquisition by Judgment; Kent's Com. *Idem.;* Peters' Cond. R. 179, Chase's Definition of Vested Rights.

2. "That by the rules by which the courts of England and this country have been governed, in construing and applying laws, the act of 1841 ought not and cannot constitutionally be so construed and applied, as to divest the rights of the complainant under his decree. Beadleston *v.* Sprague, 6 Johns. 103; Dash *v.* Van Kluck, 7 Johns. 477; Gillmore *v.* Shuter, 2 or 12 Mod. 310; 2 Levinz 227; 2 Jones 108; 4 Burr 2460; 1 Blackf. 220; 2 Gallis. 105; 1 Blac. Com. 44; 6 Bac. Abr. 370; Co. Litt. 360, a; Ogden *v.* Blackledge, 2 Cranch 262; 1 Vent. 330.

3. "That if the plaintiff in error acquired a right to the execution of his decree, according to the term thereof, the legislature of Illinois could only deprive him of that right for the use of the State, and not even for that purpose, without rendering an adequate compensation. §§ 1, 8, 11, 16, of 8th Article of State Constitution; 1 Kent's Com. 445; 2 Kent's Com. 339–40; 1 Blac. Com. 138; Vanhorn's Lessee *v.* Dorrence, 2 Dallas 304; Language of Chase in Calder *et al. v.* Bull *et al.*, 1 Peters' Cond. R. 174; 3 Story's Com. 266–8; Bowman *v.* Middleton, 1 Bay 252; Language of Story in 2 Peters 657–8; Fletcher *v.* Peck, 2 Peters' Cond. R. 319–21, Language of C. J. Marshall; Terrett *v.* Taylor, 3 Cond. R. 260, 262, Language of Story."

WM. THOMAS, for the defendants in error.

· BREESE, Justice, delivered the opinion of the Court:

The complainant, Williams, filed his *bill in chancery* in the Morgan Circuit Court, against the defendants, to foreclose a mortgage executed by them to him. At the March term, 1840, of said Court, a final decree of foreclosure was rendered, and a sale of "all the right, title, and interest of the defendants, in law and equity, and all equities of redemption in the" mortgaged premises, and directed at public vendue, after four weeks' notice, to the highest bidder, for cash in hand; and that upon the sale, a deed should be executed to the purchaser or purchasers, for the lands sold; and a commissioner was appointed to execute the decree and order of sale, and to report his proceedings in the premises to the next Court. At the October term, 1841, the commissioner reported that he gave due notice of the sale on the 8th day of July, 1841, and sold the premises on the 9th day of August following, and that the complainant became the purchaser, to whom a deed was executed, which was brought into Court for approval.

Upon the coming in of this report, the defendants entered their motion to set aside the sale, on the ground that the lands sold were not valued before the sale, according to the act regulating the sale of property, approved February 27, 1841. (1) It was admitted by the parties, that the sale had been made by the commissioner, without any valuation or appraisement. The Court disallowed this motion, and confirmed the proceedings of the commissioner, except that part of them relating to the execution of a deed to the complainant, which was disapproved, the Court deciding that the premises were subject to redemption by the defendants, under and by virtue of the eighth section of the act to amend an "*Act concerning Judgments and Executions,*" approved February 19, 1841. (2)

· Both parties excepted to the opinion of the Court; the complainant, for deciding that the premises were subject to redemption, and the defendants, for confirming the sale without a previous valuation of the premises, and bring the record here with an agreement that either party may assign errors; and accordingly, the defendants assign as error the refusal of the Court to set aside the sale, because the land had not been first valued; and the complainant assigns as error the decision of the Court, that the premises sold were subject to redemption by the defendants. These assignments of error necessarily involve the construction of the two acts above referred to.

The first section of the act regulating the sale of property, approved February 27, 1841, provides, "That when any execution shall be issued out of any of the courts of this State, whether of record or not, and shall be levied on any real or personal property or both, it shall be the duty of the officer levying such execution,

(1) Laws of 1841, 172.　　　　　(2) Laws of 1841, 171.

to summon three householders of the proper county," &c.; "which householders, after being duly sworn by such officer so to do, shall fairly and impartially value the property upon which such execution is levied, having reference to its cash value ; and they shall endorse the valuation thereof upon the execution, or upon a piece of paper thereto attached, signed by them ; and when such property shall be offered for sale, it shall not be struck off unless two-thirds of the amount of such valuation shall be bid therefor." It is further provided, " That all sales of mortgaged property shall be made according to the provisions of this act, whether the foreclosure of said mortgage be by judgment at law, or decree in chancery. The provisions of this act shall extend to all judgments rendered prior to the first day of May, 1841, and to all judgments that may be rendered on any contract or cause of action accruing prior to the first day of May, 1841, and not to any other judgments than as before specified."

The eighth section of the act to amend an *"Act concerning Judgments and Executions,"* approved February 19, 1841, is as follows : " In all cases hereafter, where lands shall be sold under and by virtue of any decree of a court of equity for the sale of mortgaged lands, it shall be lawful for the mortgagor of such lands, his heirs, executors, administrators, or grantors, (grantees) to redeem the same in the manner now allowed by law for the redemption of lands sold by virtue of executions issued upon judgments at common law," &c. The defendants contend, that under the provisions of the first recited act, the lands sold should have been valued as therein directed, before the sale, and should not be struck off unless two-thirds of the valuation was offered. The complainant insists that the law should not be so construed, as by the decree entered at the March term, 1840, he had acquired a right to have the lands sold according to the terms of the decree, without regard to valuation ; and that the legislature cannot take from him this right, or change in any manner the character of the decree ; and that by the sale and purchase by him of the lands, a right has vested which the law cannot take away.

However much controversy may be supposed to exist with regard to the first proposition, there can be no doubt as to the last, for before the complainant acquired any right to the lands by purchase, a law was passed declaring that they should be subject to redemption in the same manner that lands sold under executions issued upon judgments at law could be redeemed. There was, then, no error in the Circuit Court in thus deciding. The terms of the law are too plain for doubt or misapprehension, and he purchased with a full knowledge of its provisions.

As to the other proposition of the complainant, it is manifest that he entertains an erroneous idea of the character of the decree, and of the law by which it is supposed to be affected. It does not take from him any right secured to him by the decree, or

change the decree so far as that is concerned. The decree is the conclusion of the Court upon the allegations in the bill, and the proofs offered in support thereof. It ascertains the amount due to the complainant, and subjects the property to be sold for its payment. The rest is but detail, and not of the essence of the decree. For good cause shown by the defendants, this decree, so far as those details are concerned, might be modified or changed, as equity and good conscience might require. If the Court can modify them, upon good and sufficient cause, which no one will deny, then surely they may be modified by a legislative act.

Suppose it was a judgment at law, and at the time of its rendition, execution could issue in ten days thereafter, and a sale forced at the highest sum that might be bid, but before any execution had issued, the legislature should interfere and declare by law, that on all judgments rendered, no execution shall issue for ninety days, and the property, when sold, shall first be valued and shall sell for two-thirds of such valuation; could any one doubt the power of the legislature thus to declare, to change the rule by which sales on executions thereafter to be made, were to be governed? Such a law would not in any manner affect the rights acquired by the judgment; they would remain in full force; and all judgments are taken subject to such changes as the law making power may adopt for the purpose of enforcing them.

By the terms of this act, all sales of mortgaged property are to be regulated by it, whether the foreclosure be by judgment at law, or by decree in chancery. They are expressly included within its provisions. Having prescribed the course to be pursued upon sales by execution, the legislature declares in express terms, that all sales of mortgaged premises shall be made in the same way; the same rule is prescribed by which they shall be conducted. The sale in question was made long after the passage of this act, and by it, the commissioner, appointed to make it, was admonished in what manner he should proceed. The law contemplates sales upon decrees theretofore entered, for it provides expressly for them; they are named in the act. Laws of a similar character are passed at almost every session of every legislative body, and their validity has, long since, ceased to be questioned. To doubt the power of the legislature to alter or modify the rules governing sales at law by execution, or under decrees in chancery, would be doubting a legislative power absolutely necessary to be exercised.

To direct by a decree, that a sale of mortgaged premises shall be made in a particular way, is but a rule or direction of the Court, which the Court itself can change. Why, then, and upon what principle, should the power to change the rule established by the Court, be denied to the legislature? The doctrine that the remedy provided by law to enforce a contract, is part of the contract, and incorporated into it, has been long since exploded.

It is only, we apprehend, upon this notion, that the power to

change the remedy is questioned. The sale under the decree, according to its terms, is the remedy, which, as the complainant contends, the law gave him at the time the decree was entered, by which to enforce his contract, and no subsequent law can change it; a law for that purpose would affect his rights, and consequently impair the obligation of the contract, the remedy provided by law, at the time the contract was made and sought to be enforced, being an essential part of the contract.

A decree or judgment at law is not a contract. Contracts are made between the willing; judgment and decrees are rendered against the unwilling, and they extinguish the contract. (1)

Of course, then, no contract is affected. The remedies which the law affords to enforce contracts are no part of the contracts themselves; they do not enter into the essence of the right. If they did, then the legislature could make no change in mesne process, which is as much a part of the remedy as final process. They could not alter the time of holding courts, or the terms of courts; or extend the life of an execution, or the time of notice before sales of property under execution, or any other such like acts.

That a right may exist, and there be no remedy to enforce it, is apparent from the fact, that statutes of limitations barring a recovery of the right, after a certain lapse of time, are to be found in the legislative code of all the States, and no one has denied their validity. Such statutes do not touch the right, but merely withhold the remedy to enforce it. Nor is the right to enforce judicially the performance of a contract, requisite to its obligation, as in the case of an acknowledged claim for money paid, or services rendered, or in any other case of contract against the Government of the United States, or the King, or any other sovereign power. In these cases the right is perfect, but the law affords no remedy by which to coerce payment.

The true doctrine is, that remedies afforded by law to enforce a right or obligation, are no part of the right or obligation. If they were, then it would follow that a contract made in Missouri, by which an obligation to perform it is created, must be enforced here, according to the laws of that State, which no one will pretend. That they are not a part of the right, is deducible from the well established principle, that the remedy to enforce a contract must be according to the law of the place, in force at the time, where the remedy is sought. The right is transitory, accompanying the person everywhere; the remedy is local, confined to the place where it is sought to be enforced, and is often changed to suit the exigencies of society, while the right always remains the same.

Whenever contracts are made, it is well understood that by the terms of the political compact of society, whatever laws may exist

(1) 3 Burr. 1548.

at the time of making contracts by which they are to be enforced, are liable to be changed, and there can be no guaranty from any quarter, that they shall not be changed, for they are wholly within legislative discretion. Contracts must be supposed to be made with reference to the remedies the legislature may from time to time afford to enforce them, and a just confidence must be entertained that the power will not be abused. If it is, the corrective is with the people, not with the courts.

The first recited act then, taking away no right of the complainant secured to him by contract, or by the Constitution, but modifying only the remedy by which the decree in his favor is to be enforced, is fully within the power of the legislature to pass, and, consequently, so much of the judgment of the Circuit Court, confirming the sale by the commissioner, without his having the lands valued according to that act, is reversed, and so much as decides that the premises are subject to redemption, is affirmed.

The cause is remanded to the Morgan Circuit Court, with directions to allow the exceptions of the defendants to the master's report, and to order a re-sale of the premises, according to the provisions of the act of February 27, 1841, regulating the sale of property ; the defendants to recover their costs in this Court.

*Decree reversed.*

*Note. See* the case of Bronson *v.* Kinzie *et al.,* decided in the Supreme Court of the United States, at the January term, 1843.