**John L. Brown, sole surviving partner of Brown, De-Turck & Company, for use of Bassett, McNabb & Company, Appellee, v. John Gerson and Rosa Deimel, Appellants.**

## Gen. No. 18,404.

1. JUDGMENTS, § 6*—*what process necessary to sustain judgment.* Under section 14 of the Practice Act, J. & A. ¶ 8551, allowing a plaintiff to proceed to trial and judgment where part of the defendants are served, it is not incumbent upon the plaintiff to

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

present reasons why the codefendants have not been served, before proceeding to such judgment.

2. JUDGMENTS, § 126*—*what is admitted by default.* Where, under Rules 15, 16, 17 of the Municipal Court, a defendant was defaulted for failing to file an affidavit of merits to the plaintiff's statement of claim, which statement described a judgment sued on and alleged that such judgment was in full force and effect and unpaid, such default admitted that the judgment was in effect but did not admit the amount of damages, wherefore evidence not pertinent to the amount of damages was immaterial.

3. MUNICIPAL COURT OF CHICAGO, § 8*—*what actions court has jurisdiction of.* Section 2 of the Municipal Court Act, J. &. A. ¶ 3314, providing that such court shall have jurisdiction of "all actions on contracts, express or implied," was not intended to confer jurisdiction of actions on judgments.

4. APPEAL AND ERROR, § 1771*—*when Appellate Court may reverse a judgment.* Under the rule that the Appellate Court may reverse a judgment without remanding, "when it reverses for errors of law which cannot be obviated or cured on another trial," reversal is proper where the Municipal Court lacks jurisdiction of an action.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Reversed. Opinion filed October 9, 1913. *Certiorari* denied by Supreme Court (making opinion final.)

**Statement by the Court.** This is an appeal from a judgment of the Municipal Court of Chicago for $20,087.89, rendered in favor of appellee, plaintiff below, and against appellants.

The action was one of the first class and was commenced in April, 1911, by the filing of a *praecipe* "in a suit of contract" against appellants as defendants. It was stated in the original statement of claim that plaintiff's claim was based upon a judgment in debt, recovered in the Circuit Court of Cook county against said defendants and in favor of William S. Brown, Jacob DeTurck and John F. Brown, partners as Brown, DeTurck & Co., for $12,000 debt and the sum of $10,187.64 damages, the amount of debt to be discharged upon payment of damages, the date of said judgment being November 6, 1891, together with interest thereon. It was alleged in the original affidavit

of claim that the nature of plaintiff's demand was for the amount of said judgment, interest and costs of suit, and that the balance due was $20,087.89. Both of said defendants were served with summons, and on May 22, 1911, they filed an affidavit of merits by an agent, stating as the nature of their defense that "there is not any record of the said supposed judgment * * * against *these* defendants." Subsequently, plaintiff was given leave to file an amended statement of claim, instanter, and the amended claim and affidavit so filed were substantially the same as the original statement and affidavit, except that it was stated that said judgment was against "Rudolph Deimel, Joseph Deimel, Simon Deimel, Ignatz Deimel, John Gerson and Rosa Deimel." Subsequently plaintiff was ordered to file a certified copy of the judgment sued on, which he did. Subsequently, on June 5th, on motion of plaintiff, it was ordered that all records, papers and proceedings be amended by making Rudolph Deimel, Joseph Deimel, Simon Deimel and Ignatz Deimel codefendants, that plaintiff have leave to file an amended statement of claim instanter, that a writ of summons issue for said codefendants and that said defendants file an affidavit of merits within ten days. Plaintiff's second amended statement of claim and affidavit were substantially the same as the amended statement and affidavit, with the exception of naming the additional parties defendant and the allegation that said judgment was now in full force and effect and wholly unpaid. A summons was issued as to the four codefendants "impleaded with Rosa Deimel and John Gerson," dated June 6, 1911, and was returned by the bailiff "the within named defendants not found in the City of Chicago this 12th day of June, 1911." On June 23rd, the motion of the defendants, John Gerson and Rosa Deimel, to strike the second amended statement of claim from the files, on the ground that the action was unfounded in law and could not be maintained against said defendants, was

overruled and they were given leave to file an affidavit of merits within ten days. It appears from a bill of exceptions, filed July 15th, that said motion was supported by an affidavit of an attorney at law, in the employ of the attorneys for said defendants, to the effect that affiant, upon investigation, learned that on June 6th the summons issued against said four codefendants was filed in the office of the bailiff of said court; that when so filed a deputy-bailiff marked on the upper right-hand corner of said summons the word "Hold;" that to each copy of the summons was pinned a slip of paper by the deputy-bailiff in charge of the serving of summons upon which slips was also written the word "Hold;" that no address of any of said codefendants appeared on said slips or on said summons; that following the practice of said bailiff's office said summons was placed in a pigeon-hole in the desk of said deputy-bailiff, and that the same there remained until the return day, June 12th, when it was returned "not found" by a deputy-bailiff whose duties did not take him outside of said office.

On July 3rd, on motion of defendants, John Gerson and Rosa Deimel, they were given ten days additional time to file an affidavit of merits. They, however, never filed any affidavit of merits subsequent to the one filed on May 22nd, above mentioned. On September 26th, it appearing to the court that said defendants were in default for want of an affidavit of merits, on motion of plaintiff it was ordered that judgment be entered against them by default for want of such affidavit; and a jury being sworn to assess the damages, heard the evidence and, following the courts instruction so to do, returned a verdict assessing plaintiff's damages at the sum of $20,087.89. Said defendants thereupon moved for a new trial, and in arrest of judgment, both of which motions were overruled, and judgment against said defendants was entered upon the verdict, and subsequently a joint appeal was perfected by them to this court. It appears

from the bill of exceptions, filed November 23, 1911,
that at the hearing on the assessment of damages be-
fore the jury on September 26th, both plaintiff and
said defendants were represented by counsel, and the
transcript of said judgment of November 6, 1891,
was introduced in evidence, and Charles F. Rathbun,
a witness for plaintiff and one of his attorneys, testi-
fied that he had computed the interest on the amount
of said judgment from said date down to the day the
present suit was started, and that the total amount
due, including the interest, was $20,087.89.  On cross-
examination the witness testified that of his own per-
sonal knowledge he knew that the dockets of the Cir-
cuit Court showed a judgment; that the transcript in-
troduced in evidence was a transcript of that judg-
ment; that he signed the affidavit of plaintiff's claim;
that when in that affidavit he stated that there was due
plaintiff from the defendants the said sum of $20,-
087.89, he based that statement on the statement made
to him by the plaintiff that no part of said judgment
had ever been paid; that that was the extent of his per-
sonal knowledge in the matter; and that so far as he
knew of his own personal knowledge the judgment
might have been satisfied in the years gone by, if his
client had told him an untruth.  The attorney for de-
fendants thereupon moved that the court instruct the
jury that there was nothing in the evidence upon
which they could assess any damages, and also ob-
jected to the transcript of the judgment introduced
in evidence as being insufficient in that it did not show
any convening or adjourning order of the Circuit
Court, so that for aught that appeared the judgment
might have been satisfied or set aside during the same
term at which it was rendered.  The motion and ob-
jection were overruled and exceptions taken by de-
fendants.

McEwen, Weissenbach, Shrimski & Meloan, for appellants.

Ashcraft & Ashcraft and E. M. Ashcraft, for appellee; Charles F. Rathbun, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

Three points are argued and relied upon by counsel for appellants for a reversal of the judgment, namely: (1) The Municipal Court had no jurisdiction of the cause of action set forth in plaintiff's amended statement of claim, filed June 5, 1911; (2) even though the court had jurisdiction, it erred in rendering judgment against a less number than all of the joint judgment debtors, who were made parties defendant, and (3) the verdict and judgment are not supported by the evidence.

We do not think there is any merit in the second point. Section 14 of the Practice Act (J. & A. ¶ 8551) provides: "If a summons or *capias* is served on one or more, but not on all of the defendants, the plaintiff may proceed to trial and judgment against the defendant or defendants on whom the process is served, and the plaintiff may at any time afterwards, have a summons, in the nature of *scire facias,* against the defendant not served with the first process, to cause him to appear in said court, and show cause way he should not be made a party to such judgment, * * * ." See also *Fender v. Stiles,* 31 Ill. 460; *Cassady v. Trustees of Schools,* 105 Ill. 560, 565; *Green v. Shaw,* 66 Ill. App. 74, 76. Counsel argue that it appears from the affidavit contained in the bill of exceptions, filed July 15th, that the summons issued for the codefendants was marked by a deputy-bailiff with the word "Hold" and that no bona fide effort was made by plaintiff to obtain service on said codefendants. Under the language of the above section of the statute, we cannot see that it was incumbent upon

plaintiff to present reasons why said codefendants had not been served with process, before proceeding to judgment against the defendants who had been served. Furthermore, it is not alleged in said affidavit that either plaintiff or his attorneys knew the addresses of said codefendants, or requested that service should not be made upon them, or that the failure to serve was occasioned by any fault of plaintiff.

As to the third point urged by counsel it is argued that the verdict of the jury was based upon the unsupported and hearsay testimony of one of the attorneys for plaintiff, to the effect that the judgment sued on had not been paid or satisfied, and, therefore, the judgment entered upon that verdict is unwarranted and should be reversed. We cannot agree with counsel. In compliance with Rule 15 of the Municipal Court plaintiff filed a statement of claim, in lieu of a declaration. Subsequently plaintiff filed, on June 5, 1911, an amended statement of claim, which sufficiently complied with the requirements of said Rule, and sufficiently showed the nature of plaintiff's demand. It fully described the judgment sued on, and alleged that the judgment was in full force and effect and unpaid. Accompanying it was a transcript of said judgment, and also accompanying it was a sufficient affidavit of plaintiff's claim, showing the amount due, in compliance with Rule 16 of said court. The defendants were ruled to file an affidavit of merits to said amended statement of claim, but they did not do so, and, in compliance with Rule 17, the court defaulted them for want of such an affidavit and ordered that a jury be impaneled "to assess the plaintiff's damages." By reason of said default the defendants admitted every material allegation of plaintiff's statement of claim, one of which allegations was that the judgment sued on was in full force and effect and wholly unpaid, but the defendants had not by their default admitted the amount of damages. On that question they were entitled to cross-examine plaintiff's witness before the

jury so impaneled, but, in our opinion, they were not then entitled to cross-examine plaintiff's witness as to the extent of the witness' knowledge as to certain facts, not pertinent to the *amount* of damages, and which facts they had previously, by their default, admitted to be facts. The extent of the knowledge of said witness as to those facts at the then stage of the proceedings was wholly immaterial. "While the default admits every material allegation of the declaration, still, it does not admit the amount of the damages. The defendant, on the execution of the writ of inquiry before the court, could not introduce evidence tending to show that plaintiff had no cause of action, but would have the right to cross-examine plaintiff's witnesses and introduce witnesses on its part on the question of damages, ask for instructions as to the proper measure of damages, and preserve the rulings of the court by bill of exceptions." *Cairo & St. L. R. Co. v. Holbrook*, 72 Ill. 419, 422; *Plaff v. Pacific Exp. Co.*, 251 Ill. 243, 247.

The main contention urged by counsel for appellants for a reversal of the judgment is, that the Municipal Court had no jurisdiction of the cause of action. The question has been exhaustively argued by the respective counsel in their printed briefs and arguments, and is one which we have found somewhat difficult of determination. Section 2 of the Municipal Court Act (J. & A. ¶ 3314) is in part as follows: "That said Municipal Court shall have jurisdiction in the following cases: First. Cases to be designated and hereinafter referred to as cases of the first class, which shall include (a) all actions on contracts, express or implied, when the amount claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars $1,000; * * *."

Counsel for both parties to this appeal seemingly agree that the decision of the question turns upon the construction to be given the words "all actions on contracts, express or implied," contained in said sec-

tion.  The present action was one "of *contract*" and
was brought upon a *judgment,* within twenty years
from the date of its rendition.  Counsel for appellants
contend that a judgment is not a contract, either ex-
press or implied, within the meaning of the statute.

In *Bidleson v. Whytel,* 3 Burrow's Rep., 1545-48,
it was decided in an opinion delivered by Lord Mans-
field that "a judgment is no contract, nor can be con-
sidered in the light of a contract; for *judicium reddi-
tur in invitum.*"  Following that decision, the Su-
preme Court of this State, in the early case of *Wil-
liams v. Waldo,* 4 Ill. (3 Scam.) 264, 269, said: "A
decree or judgment at law is not a contract.  Con-
tracts are made between the willing; judgment and
decrees are rendered against the unwilling, and they
extinguish the contract."

In *Rae v. Hulbert,* 17 Ill. 572, the question arose,
under the provisions of an existing statute providing
that a defendant "in any action brought upon any con-
tract or agreement, either express or implied, having
claims or demands against the plaintiff, may set up
the same and have them allowed him upon the trial,"
whether a judgment could be set off by the defendant
in an action against him, and it was *held* that it could
not be.  The Court said (p. 579): "We cannot agree
with counsel that a judgment is a contract, within the
meaning of the statute.  It is the conclusion of the law
upon the rights of the parties, and it is not very com-
mon that it is entered up by the agreement of the un-
successful party, but the reverse is generally the
case.   *   *   *   A judgment is no more a contract than
is a tort.  In one sense it is true that every member
of society impliedly agrees to pay all judgments which
may be regularly rendered against him; and, in the
same sense, does he impliedly agree to make amends
for all torts which he may commit."

In *Ambler v. Whipple,* 139 Ill. 311, it appeared that
a certain act of the legislature, passed in 1849, pro-
vided that "all actions founded upon any promissory

note, simple contract in writing, bond, *judgment,* or other evidence of indebtedness in writing, caused or entered into after the passage of this act, shall be commenced within," etc. It further appeared that subsequently the legislature passed an act as a substitute for the former act, which provided that "actions on bonds, promissory notes, bills of exchange, written leases, written contracts or other evidence of indebtedness in writing, shall be commenced within," etc. It was contended that the words "other evidence of indebtedness in writing" in the later act necessarily included *judgments.* But the Court held to the contrary, saying (p. 319): "It will be observed that the later statute omits the word 'judgment' before the general clause, 'or other evidence of indebtedness in writing.' It is to be presumed that by the change in the phraseology some change was intended to be made in the rule of law, and would clearly indicate an intention to exclude judgments from the operation of the later enactment. It cannot be presumed that the omission was accidental, nor can a misapprehension of the legislature as to the effect of the change in the law be inferred. In construing this section it is proper to consider it with reference to the state of the law before its adoption." The Court also held (p. 318) that a judgment for the payment of money is *evidence of indebtedness* of the highest dignity known to the law, but quoted with approval portions of the opinion in *Rae v. Hulbert, supra,* wherein it was held that a judgment was *not a contract.*

In *Belford v. Woodward,* 158 Ill. 122, 135, the Court cites with approval the cases of *Williams v. Waldo* and *Rae v. Hulbert, supra,* and said: "Counsel for plaintiff in error claim, that a judgment is a contract. Some courts have held that a judgment is a contract, and others have held that it is not a contract. * * * The doctrine of this court is that is, that a judgment is not a contract."

In *Morley v. Lake Shore & M. S. Ry. Co.,* 146 U. S.

162, Mr. Justice Shiras, in delivering the opinion of the court, said: "It is contended on behalf of the plaintiff in error * * * that the judgment is itself a contract. * * * The most important elements of a contract are wanting. There is no *aggregatio mentium.* The defendant has not voluntarily assented or promised to pay. 'A judgment is, in no sense, a contract or agreement between the parties.' *Wyman v. Mitchell,* 1 Cowen [N. Y.] 316, 321."

Counsel for appellee have cited many cases in other States, holding that a judgment is a contract, and they have also called our attention to several well-known text books, wherein it is stated that a "judgment" is a "contract of record", but they have not cited, nor has our attention been called to any later case decided by our Supreme Court, wherein the "doctrine" of that court, that a judgment is not a contract, has been expressly departed from. Counsel admit that in a limited sense the word "contract" has one meaning, and that to fall within this meaning it must have all the elements of a contract, such as a consideration, meeting of minds, etc., but they contend that the word, as used in said statute, has a much broader meaning. They argue that a judgment is a *legal obligation,* that being a legal obligation the judgment debtor *impliedly* agrees to pay it, and that the legislature of the State, in making the classification in the first paragraph of section 2 of the act, intended to separate actions *ex contractu* and *ex delicto,* and, by the use of words "all actions on contracts, express or implied," in clause "a" of said paragraph, intended to give the Municipal Court jurisdiction of actions on judgments where the amount claimed by plaintiff exceeded $1,000. In support of their argument they cite the cases of *Chudnovski v. Eckels,* 232 Ill. 312, and *Harty Bros. & Harty Co. v. Polakow,* 237 Ill. 559.

In the former case the court held that the Municipal Court has jurisdiction, under said clause of the statute, in an action of *assumpsit* by a passenger

against a common carrier for breach of the implied contract of carriage, resulting in an injury to the passenger, if the amount claimed by plaintiff exceeds $1,000. In the latter case it was held that the Municipal Court has jurisdiction, under the same clause of the statute, of an action of *assumpsit* brought under section 28 of the Mechanic's Lien Act (J. & A. ¶ 7165) by a subcontractor against the owner and contractor, jointly, by reason of the implied contract between the subcontractor and the owner, there being an express contract between the owner and the contractor and an express contract between the contractor and the subcontractor. In the *Chudnovski* case, *supra,* the Court said on page 316 (italics ours): "Appellants contend that the words 'contracts, express or implied,' in this section, do not include cases for personal injuries. They seek to apply to the construction of these words a distinction between constructive contracts, or fictions of law adapted to enforce legal duties by actions of contract, and implied contracts, which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. * * * (p. 317.) The term 'implied contract' is a familiar one in the law. By reason of the relation of the parties or the existence of an *obligation* or duty a contract may be implied by law which the party never actually intended to enter into and the obligation of which he did actually intend never to assume. * * * (p. 319.) *The distinction* between contracts implied by law from the existence of a *plain legal obligation,* without regard to the *intention* of the parties or *even contrary thereto,* and contracts implied in fact from acts or circumstances indicating their mutual intention, *is unimportant in this case. All alike come within the natural and usual meaning of the words 'implied contract.'* * * * (p. 320). There is nothing in any part of the act indicating that the words 'contract, express or implied,' were used in other than their natural and ordinary sense. * * * While it is true that actions of trespass *vi et armis*

for an injury to the person and actions on the case are not within the jurisdiction of a justice of the peace, we know of no reason why such magistrate has not jurisdiction of an action for a breach of contract of carriage resulting in an injury to the passenger, where the amount claimed does not exceed his jurisdiction. * * * It is very clear that neither the legislature nor the courts have given to the expression, 'contracts, express or implied,' any technical or limited meaning other than the words naturally bear."

In the *Polakow* case, *supra,* it is said, on page 564 (italics ours):

"The term 'implied contract' has been used to denote not only contracts implied in fact,—that is, obligations where the mutual intention to contract, although not expressed, is implied or presumed from the acts of the parties or from surrounding circumstances,—but also to denote that class of *obligations imposed or created by law without the assent of the party bound,* and sometimes even notwithstanding his actual dissent, upon the ground that they are dictated by reason and justice. These latter obligations have sometimes been called constructive contracts or contracts implied by law,—fictions of law adopted to enforce legal duties. * * * This court has held in the recent case of *Chudnovski v. Eckels,* 232 Ill. 312, that there is no distinction between contracts implied by law from the existence of a plain legal obligation, without regard to the intention of the parties, or even contrary thereto, and contracts implied, in fact, from acts or circumstances indicating the mutual intention; that *all alike come within the natural and usual meaning of the words 'implied contract.' 'Whatever the laws order anyone to pay, that becomes instantly a debt which he hath beforehand contracted to discharge.'* 3 Blackstone 160; *Bowen v. Hoxie,* 137 Mass. 527; Bishop on Contracts, sec. 205; *Pacific M. S. Co. v. Joliffe,* 2 Wall. 450."

In neither the *Chudnovski* case nor the *Polakow* case *supra,* did the court expressly decide that the Municipal Court, under said clause of the statute, had jurisdiction of an action upon a judgment, nor did it

refer to the question whether or not a judgment was a contract. Counsel for appellee, however, contend that from the language used in the opinions it is clear that a judgment is such a legal obligation as comes within the natural and usual meaning of the words "implied contract," and that those cases in effect decide that, by the use of the words "contracts, express or implied" in said clause of the statute, the legislature intended to confer jurisdiction upon the Municipal Court of an action upon a judgment. In view of the prior decisions of our Supreme Court, above mentioned, we are unable to agree with counsel's conclusion.

In *Wright v. People*, 101 Ill. 126, 131, it is said: "It is universally conceded that one of the most efficient means in ascertaining the legislative intent in the adoption of a new statute is to consider it with reference to the state of the law before its adoption, and particularly with reference to the previous legislation on the same subject." See also *Ambler v. Whipple, supra;* 36 Cyc. 1144. When the section of the Municipal Court Act in question was adopted it was the law of this State that a judgm⸱⸱⸱ ⸺ ⸱ not a contract; and long prior to and at the tn⸱ ƒ its adoption there were statute laws which mɛ distinctions between unwritten contracts and writ contracts and judgments, as to the limitation o me within which actions could be brought ther⸱ . These distinctions exist today. It was then the l⸱ as now, that "actions on unwritten contracts, expre d or implied, * * * shall be commenced within i ⸱ years next after the cause of action accrued" (ch. ⸱. 83, sec. 15, Rev. St.; J. & A. ¶ 7210); that "actions ı bonds, * * * written contracts, or other evidei ɛes of indebtedness in writing, shall be commenced within ten years next after the cause of action acc ɜd" (sec. 16; ¶ 7211); and that "judgments in an: ɔourt of record in this State may be revived by *sci⸱ facias,* or an action of debt may be brought thereon ⸱ithin twenty years next

after the date of such judgment, and not after" (sec. 26; ¶ 7221). In 1886, in the case of *United States v. Board of Auditors,* in the Circuit Court for the Northern District of Illinois (28 Fed. Rep. 407, 408), Blodgett, J., said that the section of the statute last above quoted "clearly takes judgments in the courts of record out of the classes of indebtedness covered by sections 15 and 16 of chapter 83 [¶¶ 7210, 7211], which relate specifically to indebtedness evidenced by oral and written contracts, and preserves the right of action on such judgments for the term of 20 years."

In 1911, the legislature of this State (House Bill No. 615, approved June 10, 1911) passed an act, subject to the approval thereof by a majority of the legal voters of the city of Chicago voting thereon, amending certain sections of the Municipal Court Act. (Laws of Illinois, 1911, page 260.) One of the sections amended was section 2, and clause "a" in the first paragraph of said section was amended to read as follows: "(a) All actions on contracts, express or implied, *and actions on judgments* when the amount claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars ($1,000)." The legislature directed that the act should be submitted to said legal voters "at the first regular municipal, judicial, general or special election" which should occur after July 1, 1911. We are informed by counsel that the act was submitted to said voters at the regular election held in November 1911, but failed of adoption. During the present year, 1913, the legislature of this State (House Bill No. 416, approved June 28, 1913) passed an act, subject to the approval of a majority of the legal voters, etc., entitled "An act in relation to the Municipal Court of Chicago." (Laws of Illinois 1913, page 212.) The legislature directed that this act should be submitted to said legal voters "at the first regular municipal, judicial, general or special election which shall occur in said city of Chicago after the date of the passage of this act." Such election has not at present

writing yet been held. Clause "a" of the first paragraph of section 2 of this new act reads as follows: "(a) All actions on contracts, express or implied, *and actions on judgments,* when the amount claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars ($1,000)." It is to be noticed that by these two acts of the legislature it was and is sought to expressly confer jurisdiction upon the Municipal Court of "actions on judgments," *in addition* to the jurisdiction previously conferred of "actions on contracts, express or implied."

In view of the foregoing, and after careful consideration, we are of the opinion that when the legislature passed the section of the act in question it was not its intention to confer jurisdiction on the Municipal Court of an action on a judgment; and we have reached the conclusion, and so hold, that the trial court did not have jurisdiction of the present action, and for that reason the judgment must be reversed. As said in the *Polakow* case, *supra,* at page 567, the Appellate Court may reverse a judgment without remanding the cause under two conditions, the second of which is "when it reverses for errors of law which cannot be obviated or cured on another trial. A want of jurisdiction in the Municipal Court falls within the second class." The judgment of the Municipal Court will, therefore, be reversed, but the cause will not be remanded.

*Reversed.*