Christopher Strassheim for use of Maria P. Barnes, Appellant, v. Mary C. Barnes, Administratrix, et al., Appellees.

## Gen. No. 23,838.

1. APPEAL AND ERROR, § 1065*—*when question whether finding is against weight of evidence is sufficiently raised.*  Even though it is not assigned and argued as error that a finding was against the "weight of the evidence" *eo nomine,* the question as to whether it was against the weight of the evidence is sufficiently raised where it is assigned as error that the finding and judgment are contrary to the evidence, that the amount of the finding and judgment and the damages are insufficient, and appellant's analysis of the evidence and deductions therefrom as to the insufficiency of the damages clearly imply and involve the contention and conclusion that the court's finding and judgment were against the weight of the evidence.

2. REPLEVIN, § 206*—*when presumption of ownership of securities arising from possession is overcome.*  In an action on a replevin bond given by an administratrix where a nonsuit was taken in the replevin case, a writ of *retorno* was issued and returned reciting a demand for the securities taken under the writ, and a refusal to comply, where it appears that not only were the securities purchased by defendant's intestate with the funds intrusted to him by plaintiff, who was his sister, but were commingled with his own securities without distinguishing marks of ownership and no accounting was rendered by him, but also there are undisputed and unimpeached admissions by him of plaintiff's ownership of the securities, the evidence is sufficient to overcome the prima facie proof of his ownership arising from the fact that the securities were in his possession at the time of his death, and, in such case, the damages assessed should have been the unquestioned value of the securities.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Strassheim v. Barnes, 212 Ill. App. 299.

ADDITIONAL OPINION ON REHEARING.

1. MUNICIPAL COURT OF CHICAGO, § 8*—*when has jurisdiction.* The jurisdiction of the Municipal Court of Chicago under section 2 of the Municipal Court Act (J. & A. ¶ 3314) includes specialties even though the amount claimed exceeds $1,000, and consequently the court has jurisdiction of an action on a replevin bond in which the amount claimed exceeds $1,000, such action being one on a contract.

2. APPEAL AND ERROR, § 50*—*what finding upon facts unnecessary.* Where the Appellate Court differs from the trial court as to facts, a finding upon the facts not in controversy is not necessary in the judgment order.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Reversed with finding of fact and judgment here for $56,150. Opinion filed October 15, 1918. Rehearing denied and additional opinion on petition for rehearing filed November 22, 1918. *Certiorari* denied by Supreme Court (making opinion final).

OSCAR E. LEINEN, for appellant; ROBERT F. KOLB, of counsel.

HENRY W. MAGEE, E. W. ADKINSON and MAYER, MEYER, AUSTRIAN & PLATT, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

This was an action on a replevin bond, given to appellant Strassheim, as sheriff, in a replevin suit in which appellee, Mary C. Barnes, administratrix of the estate of Erastus A. Barnes, deceased, was plaintiff, and appellant, Maria P. Barnes (known and herein referred to as Myra Barnes), was defendant.

The property taken on the replevin writ consisted of eleven mortgage notes and seven Mexican and three Japanese bonds, alleged in the replevin affidavit to be worth about $40,000. The bond sued on was for $80,000.

A nonsuit was taken in the replevin case, and a writ

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of *retorno* was issued, and was returned, reciting a demand for the property taken under the writ and a refusal to comply therewith. A breach of the bond by failure to prosecute the said replevin suit is not questioned. The real issue at the trial was as to the amount of damages sustained, which depended on the ownership of the replevied securities and their value. The court (a jury being waived) found the issues for appellant, rendering judgment in debt for $80,000, and assessing damages at only $1,452.51, the value of one of said notes.

Appellant complains of adverse rulings in the admission and rejection of evidence which we need not consider, for, regardless of them, the contention that the court should have assessed damages to the full proven value of all the securities so replevied is clearly supported by a preponderance of evidence.

Appellees say that "plaintiff nowhere complains that the finding was contrary to the weight of the evidence," and do not discuss the weight of the evidence, apparently because appellant has not argued the case in those express words. Appellant assigned as errors that the finding and judgment are contrary to the evidence, and that the amount of the finding and judgment, and the damages, are insufficient, and appellant's analysis of the evidence and deductions therefrom as to the insufficiency of the damages clearly imply and involve the contention and conclusion that the court's finding and judgment were against the weight of the evidence. That is the sum and substance of appellant's argument, and it would be taking short shrift of justice to disregard it because not couched in the express terms of the assignment of error appellees allude to. Appellees were content, without discussing the evidence, to rest their case on the reasoning of the trial court's opinion announced at the close of the evidence and preserved in the record. We have carefully examined it, in connection with the evidence, and

while we agree with many of its conclusions of law we note that it fails to give consideration to important and unimpeached testimony tending directly to confirm appellant's claim as to the ownership of said securities.

The court's opinion, thus adopted as appellees' argument, treats Myra Barnes' ownership as predicated almost exclusively on the character of her possession, and ignores vital admissions of Erastus Barnes as to her ownership and his trust relationship to her. The evidence discloses these important facts: He was her brother; both were school-teachers, frugal and industrious, and lived together in close and affectionate association all their lives. He married appellee, Mary C. Barnes, about 4 months before his death, which took place January 7, 1909, in his 60th year. Myra was 5 years younger. It is unquestioned that for many years prior to his death he invested and reinvested her moneys, as well as his own, and kept and cared for her securities. These appear to have been placed and commingled with his own in a safety deposit box, that was kept in their joint name, where they were found and taken out by the parties to the replevin suit, or their representatives, about one week after his death and examined. Among them then were the securities in question, which were afterwards, on August 19, 1910, taken from that box in execution of the replevin writ.

An order was given to the custodian the day after the securities were so examined, signed by the attorneys of Mary and Myra Barnes, respectively, that the box was not to be opened without the joint consent of said attorneys. She paid the rent for the box from May, 1909.

While appellee, Mary C. Barnes, necessarily recognized appellant's actual possession of the securities in her replevin proceeding, she relied mainly upon prima facie evidence of title from such possession as

the deceased had at the time of his death, and the court's theory of the proof was that such possession was prima facie evidence of title in the deceased that was not changed by subsequent events.

But the court did not discuss the question of title, either from the point of view of admissions made by deceased with respect thereto, or as to his trusteeship, which evidence, unquestioned and unimpeached, overcame, in our judgment, whatever weight might be attached to the mere possession of deceased, and to the fact that he personally bought and paid over the money for said securities.

These admissions were made from time to time within the last 10 years of his life, to or in the presence of different persons, and as late as the autumn of 1907, just prior to his departure on a trip to the Hawaiian Islands and long after said securities had been purchased. In that year he told several persons that he had "always taken care of Myra's affairs and invested her money and that she had now (1907) accumulated about $40,000 worth of bonds and mortgages besides other securities"; and just before he started on said trip he told a close associate that all the Mexican and Japanese bonds he had purchased were purchased for his sister, and that she was then worth over $50,000, and also told the cashier and bookkeeper of the firm through which the mortgage loans and sale of the notes were negotiated and which kept an account of them, some in the name of the deceased and some in the name of his sister as directed by deceased, that the very mortgage notes here in question and those referred to in both of said accounts belonged to his sister, "that her money was in them," and in case of accident they were "to be turned over to her."

These admissions were in rebuttal of the prima facie case of appellees, which rested upon the mere fact that Erastus Barnes personally negotiated and paid for

said securities and retained posession of them as aforesaid, and they stand unrefuted.

If we disregard entirely the trust relation, and the commingling by him of his sister's securities with his own without any distinguishing marks of ownership, and his apparent failure to render an accounting of his trust, still said undisputed and unimpeached admissions, which have the earmarks of verity, manifestly outweigh the mere prima facie proof of ownership in deceased and the fact of his personal purchase of the securities, relied on by appellees. Hence, we think the court should have found the ownership of the replevied securities to be in Myra Barnes and have assessed the damages according to their unquestioned value.

The values of said securities as stated in the affidavit of replevin and as confirmed by the account of said administratrix filed in the Probate Court, in which she charged herself with the collection of the same at such alleged values, aggregate $38,470, to which should be added interest at 5 per cent from the time of the replevin, namely, August 19, 1910. Said interest amounts to $17,680, making the total amount of damages $56,150. Accordingly judgment will be entered here in the usual form for $80,000, in debt, and $56,150 damages, together with the costs to be paid by the defendant, Mary C. Barnes, administratrix of the estate of Erastus A. Barnes, deceased, in due course of administration, the debt to be discharged on the payment of said damages and costs and interest thereon from the filing of this opinion.

*Reversed with finding of fact and judgment here for $56,150.*

Finding of fact. We find that the notes and bonds with their respective coupons described in the replevin bond sued on and replevied from the possession of appellant, Maria P. Barnes, August 19, 1910, were then

the property of the latter and that their value when so replevied was $38,470, and that the damages in consequence of said breach amount with legal interest to $56,150.

ADDITIONAL OPINION FILED ON PETITION FOR REHEARING.

MR. JUSTICE BARNES delivered the opinion of the court.

In the petition for a rehearing it is urged for the first time that this being an action of debt where the amount claimed exceeds $1,000, the Municipal Court did not have jurisdiction of the cause. With this we do not agree. Included in cases of the first class over which that court is given jurisdiction by section 2 of the Municipal Court Act (J. & A. ¶ 3314), are "all actions on contracts, express or implied" when the amount claimed exceeds $1,000. Unless inconsistent with some other provision in the act, the phrase quoted must be deemed to include specialties as well as other forms of contract. The provision in said section classifying among cases of the fourth class actions on bonds, where the amount sought to be recovered does not exceed $1,000, does not, in our opinion, militate against such construction.

In support of the argument that the action of debt will not lie in a first-class case, we are referred to *People v. Dummer*, 274 Ill. 637, and *Brown v. Gerson*, 182 Ill. App. 177. The holding in each of these cases is that the suit before the court not being upon a *contract*, it did not come within the classification, "contracts, express or implied." Neither decision is grounded on a want of jurisdiction because of the form of the action.

It will hardly be questioned that debt is one of the forms of action *ex contractu*, over which said court has jurisdiction without limit in amount claimed, and the appropriate form of action on a replevin bond. (*Manning v. Pierce*, 3 Ill. 4.) Section 3 of the Municipal Court Act (J. & A. ¶ 3315) expressly authorizes,

in cases of the first class, the same form of pleadings in use in similar cases in the Circuit Courts. We think, therefore, that the court had jurisdiction of the action, as one on a contract, and that it could be prosecuted under any appropriate form of action employed in Circuit Courts.

It is claimed that the recitals of fact in the judgment order are defective and not sufficiently full. Where we differ from the trial court as to facts, a finding upon those facts not in controversy is unnecessary. (*Iroquois Furnace Co. v. Elphicke*, 200 Ill. 411; *Laughlin v. Norton*, 267 Ill. 476.) The only fact in controversy here was as to the ownership of the property replevied. But there was none as to the value thereof, or the breach of the bond. So far, however, as the judgment order of this court refers to damages for the "wrongful taking" instead of said breach, the order will be modified.

*Rehearing denied.*