ROSE CHUDNOVSKI, Appellee, *vs.* JAMES H. ECKELS *et al.*
Receivers, Appellants.

*Opinion filed February 20, 1908.*

1. STATUTES—*words used are to be taken in ordinary meaning.*
In the interpretation of statutes words are to be taken in their ordinary meaning in general and popular use, unless some absurd or injurious consequence would result or it is apparent from the whole law and laws *in pari materia* that a different meaning was intended; and if there is no ambiguity in the words used there is no room for construction.

2. CONTRACTS—*what is included in the term "implied contracts."*
Contracts implied by law from the existence of a plain legal obligation, without regard to the intention of the parties or even contrary thereto, and contracts implied, in fact, from acts or circumstances indicating their mutual intention, are alike within the natural and ordinary meaning of the term "implied contracts."

3. SAME—*implied contract exists between carrier and passenger.*
The presence of a street railway in the streets of a city is a continuing offer of transportation to every individual desiring the same upon the terms fixed by the law and the ordinances, and where such offer is accepted by a person by becoming a passenger for hire, the law implies a contract that the passenger will be safely carried and conveyed.

4. COURTS—*municipal court has jurisdiction of action by passenger for personal injury.* Under clause 1 of section 2 of the Municipal Court act, giving that court jurisdiction in "all actions on contracts, express or implied, when the amount claimed by the plaintiff exceeds $1000," the municipal court has jurisdiction of an action by a passenger against a carrier for breach of the implied contract of carriage, resulting in an injury to the passenger, if the amount claimed by the plaintiff exceeds $1000.

5. CONSTITUTIONAL LAW—*clause 1 of section 2 of the Municipal Court act is not unconstitutional.* Clause 1 of section 2 of the Municipal Court act, conferring jurisdiction in all actions on contracts, express or implied, where the amount claimed by the plaintiff exceeds $1000, applies to all persons, corporations and all contracts, provided, only, that the requisite amount is involved, and hence is not class legislation; nor is it a denial of the equal rights and privileges guaranteed by the Federal constitution to persons having the same rights under the law.

APPEAL from the Municipal Court of Chicago; the Hon.
EDWARD A. DICKER, Judge, presiding.

This was an action of assumpsit in the municipal court of Chicago by appellee, against appellants, to recover damages for personal injury.

The declaration alleged that appellants, as receivers of the Chicago Union Traction Company, were in the use, control and management of divers lines of street railway in the city of Chicago, operating cars thereon and conducting the business of a common carrier; that on July 15, 1906, appellee, at the special instance and request of the appellants, became a passenger on a certain street car on Robey street to be carried for hire and reward, and that appellants then and there undertook and faithfully promised appellee to safely carry and convey her; that she paid them the sum of five cents, being the hire and reward requested; that appellants did not use due and proper care, skill and diligence to carry her, and that by reason thereof, and of the careless, improper, negligent and unskillful manner in which the car was operated, she was injured by a collision between the car on which she was riding and another car owned and operated by appellants.

A demurrer to the declaration was overruled, and appellants electing to stand by their demurrer the damages were assessed by a jury and judgment was entered against the appellants, to reverse which they prosecute an appeal to this court.

JOHN A. ROSE, and CHARLES L. MAHONY, (JACOB L. BAILY, of counsel,) for appellants:

The construction put upon the Municipal Court act of the city of Chicago, that under section 2 of said act (subsection 1) actions for injuries to the person may be brought in that court where the amount claimed exceeds $1000, renders sub-section 1 of the act unconstitutional and void, as being obnoxious to section 22 of article 4 of the constitution, which forbids class legislation. Cooley's Const. Lim. (5th ed.) 483, 485-487; Binney on Special Restrictions in

Legislation, 56; *Horwich* v. *Walker-Gordon Laboratory,* 205 Ill. 507; *Lippman* v. *People,* 175 id. 104; *Eden* v. *People,* 161 id. 296; *Harding* v. *People,* 160 id. 465; *Coal Co.* v. *Harrier,* 207 id. 628; *Bailey* v. *People,* 190 id. 29; *Badenoch* v. *Chicago,* 222 id. 71.

The construction put upon the act by the municipal court operates as a denial of equal privileges and immunities and a denial of due process of law under the fourteenth amendment of the constitution of the United States. Cooley's Const. Lim. 486, 487; *Badenoch* v. *Chicago,* 222 Ill. 81; *Lippman* v. *People,* 175 id. 106; *Coal Co.* v. *Harrier,* 207 id. 628.

A statute must be interpreted according to its intent and meaning, and, reasonably, so as to accomplish its general object. The different sections of a statute relating to the same subject should be construed together in arriving at the legislative intent. Sutherland on Stat. Const. secs. 215-239; *Pease* v. *People,* 82 Ill. App. 323.

In construing a statute the primary consideration is to ascertain and give effect to the legislative intent. To accomplish this object the court should look at the whole act, and may also consider other and prior acts relating to the same general subject. *Soby* v. *People,* 134 Ill. 66.

When an interpretation has been given to a statute and that construction has been long accepted and acquiesced in by the government and the people, and all classes of the community have conformed to the law as thus announced, this interpretation should be given effect, even though it may not seem to have been the most reasonable. *Headen* v. *Rust,* 39 Ill. 186.

Where there is in the same statute a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the

particular enactment. *In re Watson*, 1 Q. B. 21; Endlich on Statutes, par. 399.

If by giving a literal construction to a statute it will be the means of producing great injustice and consequences that could not have been anticipated by the legislature, the courts are bound to presume that the legislature intended no such consequences. *Bryan* v. *Buckmaster*, Breese, 408; *People* v. *Marshall*, 1 Gilm. 689; *Castner* v. *Walrod*, 83 Ill. 171; *Kruse* v. *Aden*, 127 id. 231; *Railway Co.* v. *Binkert*, 196 id. 298.

DARROW, MASTERS & WILSON, for appellee:·

The relationship existing between a common carrier of passengers and a passenger is that of contract, and an action will lie by the passenger against the carrier for a breach of said contract in failing to convey the passenger safely to his destination. *Busch* v. *Rapid Transit Co.* 80 N. E. Rep. 197; *Railway Co.* v. *Friedman*, 146 Ill. 583; 3 Ency. of Pl. & Pr. 818; 15 id. 1121; *Nevin* v. *Car Co.* 106 Ill. 222; *Railway Co.* v. *Jennings*, 217 id. 140

A statute or act is to receive that interpretation which the ordinary reading of its language warrants, and if the language is clear and admits of but one meaning the legislature should be intended to mean what it has plainly expressed, and there is no room for construction. 26 Am. & Eng. Ency. of Law, (2d ed.) 598, 600, 601; *Railroad Co.* v. *Dumser*, 109 Ill. 402; *Martin* v. *Swift*, 120 id. 488; *Gas Light Co.* v. *Downey*, 127 id. 201; *People* v. *Rose*, 174 id. 310.

The modern rule of construction is to give a statute the meaning that most plainly appears upon its face, and only penal statutes, and statutes carrying with them a penalty, receive the strict construction given to statutes under the old doctrine. 26 Am. & Eng. Ency. of Law, (2d ed.) 600, 601; *Railroad Co.* v. *Dumser*, 109 Ill. 402; *Gas Light Co.* v. *Downey*, 127 id. 201.

The section of the Municipal Court act under which this action is brought is not special legislation, because it applies to all contracts, express or implied, against every person, corporation or class, and does not give any rights or remedies that do not exist or did not always exist, but simply provides a new forum to hear cases, and which said forum has been held valid by this Supreme Court. *Cummings* v. *Chicago,* 144 Ill. 563; *Hawthorn* v. *People,* 109 id. 302; *Chicago* v. *Reeves,* 220 id. 274.

Mr. JUSTICE DUNN delivered the opinion of the court:

The only question presented by this appeal is whether or not the municipal court of Chicago had jurisdiction of the subject matter. The municipal court held that jurisdiction was conferred upon it by the first clause of section 2 of the Municipal Court act, and the appellants contend that such construction makes the clause violative of section 22 of article 4 of the constitution of the State and of the fourteenth amendment of the constitution of the United States.

Section 2 of the Municipal Court act (Laws of 1905, p. 158,) enumerates the cases of which the court shall have jurisdiction, as follows: "First, all actions on contracts, express or implied, when the amount claimed by plaintiff exceeds one thousand dollars ($1000) and all actions for the recovery of personal property or for the recovery of damages for the conversion of an injury to personal property when the value of the property on [or] the amount of damages sought to be recovered, as claimed by the plaintiff, exceeds one thousand dollars ($1000.) * * * Fifth, all other suits at law, for the recovery of money only, when the amount claimed does not exceed one thousand dollars ($1000.)"

Appellants contend that the words "contracts, express or implied," in this section, do not include cases for personal injuries. They seek to apply to the construction of these words a distinction between constructive contracts, or fic-

tions of law adapted to enforce legal duties by actions of contract, and implied contracts, which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.

In the interpretation of statutes, words are to be taken in their ordinary meaning in general and popular use, unless some absurd or injurious consequence would result, or it is apparent from the whole law and other laws *in pari materia* that a different meaning was intended. The meaning and intent of the legislature must be ascertained from the words employed, and where there is no ambiguity there is no room for construction. "It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *City of Beardstown* v. *City of Virginia,* 76 Ill. 34.

The term "implied contract" is a familiar one in the law. By reason of the relation of the parties or the existence of an obligation or duty a contract may be implied by law which the party never actually intended to enter into and the obligation of which he did actually intend never to assume. Whether or not it accords with scientific terminology to call an obligation imposed by the existence of a duty an implied contract, yet in the ordinary use of language by courts and writers it has been almost universally so called. "Implied contracts," says Blackstone, "are such as reason and justice dictate, and which, therefore, the law presumes that every man has contracted to perform, and upon this presumption makes him answerable to such persons as suffer by his non-performance." (3 Com. 158.)

In the sixth subdivision of his classification of implied contracts which arise from natural reason and the just construction of the law, he says: "The last class of contracts, implied by reason and construction of law, arises upon this supposition: that every one who undertakes any office, employment, trust or duty, contracts with those who employ or entrust him, to perform it with integrity, diligence and skill; and if by his want of either of those qualities any injury accrues to individuals, they have their remedy in damages by a special action on the case." (Ibid. 163.) And among the instances of implied contracts are mentioned those of the common inn-keeper to secure his guest's goods in his inn, of the common carrier to be answerable for the goods he carries, and of the common farrier that he shoes a horse well without laming him.

"The law presumes or implies from the fact of receiving, as common carriers, the passenger to carry for hire, a contract." (*Frink* v. *Potter*, 17 Ill. 406; *North Chicago Street Railroad Co.* v. *Williams*, 140 id. 275; *West Chicago Street Railroad Co.* v. *Manning*, 170 id. 417.) It is not difficult to cite decisions in many jurisdictions recognizing the existence of a contract between carrier and passenger from the mere fact of the relation. *Busch* v. *Interborough Rapid Transit Co.* 187 N. Y. 388; *Cincinnati, Lawrenceburg and Aurora Electric Street Railroad Co.* v. *Lohe*, 68 Ohio St. 101; *Dwinelle* v. *New York Central and Hudson River Railroad Co.* 120 N. Y. 117; *MacKay* v. *Ohio River Railroad Co.* 34 W. Va. 65; *Jacksonville, St. Augustine and Halifax River Railroad Co.* v. *Mitchell*, 32 Fla. 77; *Aiken* v. *Southern Railway Co.* (Ga.) 62 L. R. A. 666; *Knoxville Traction Co.* v. *Lane*, 103 Tenn. 376; *O'Rourke* v. *Citizens' Street Railway Co.* 103 id. 124; *Paulin* v. *Canadian Pacific Railroad Co.* 52 Fed. Rep. 197.

Hutchinson on Carriers (vol. 3, sec. 1403,) says: "As in the case of common carriers of goods and merchandise, the carrier of passengers may be sued for an injury to

the passenger by his negligence, either in assumpsit for the breach of the contract, whether express or implied, to carry safely, or in an action on the case for the wrong," and cites *Knights* v. *Quarles,* 2 Brod. & Bing. 102, *Magee* v. *Navigation Co.* 46 Fed. Rep. 734, and *Railway Co.* v. *Russ,* 57 id. 822. We have examined those cases and they clearly sustain the text of the author.

The distinction between contracts implied by law from the existence of a plain legal obligation, without regard to the intention of the parties or even contrary thereto, and contracts implied in fact from acts or circumstances indicating their mutual intention, is unimportant in this case. All alike come within the natural and usual meaning of the words "implied contract." "In that large class of transactions designated in the law as implied contracts, the assent or convention which is an essential ingredient of an actual contract is often wanting. Thus, if a party obtain the money of another by mistake it is his duty to refund it, not from any agreement on his part, but from the general obligation to do justice which rests upon all persons. In such case the party makes no promise on the subject, but the law, 'consulting the interests of morality,' implies one, and the liability thus arising is said to be a liability upon an implied contract.—*Argenti* v. *San Francisco,* 16 Cal. 282; Maine on Ancient Law, 344." *Pacific Mail Steamship Co.* v. *Joliffe,* 2 Wall. 450.

Instances of contracts implied by law without any actual meeting of the minds or mutual understanding of the parties, or even contrary to the manifest intention of one sought to be charged, are cases where one man has obtained money from another by oppression, imposition, extortion or deceit, or by the commission of a trespass; cases where necessaries have been furnished to a wife wrongfully abandoned by her husband, though he has given notice that he will not be responsible; cases of the decoying away of another's servant and making use of his labor. This is, how-

ever, not a case in which the contract was not willingly entered into, even though the law and the ordinances of the city fixed its terms. The corporation of which appellants are the receivers was voluntarily organized and voluntarily constructed its railways in the streets of Chicago and began their operation. It must have obtained the right to do so by virtue of an ordinance or ordinances voluntarily accepted by it. Having done so, its presence in the streets and operation of its railway were a continuing offer to every individual desiring transportation upon the terms fixed by law and the ordinances, and, when the offer was accepted by any individual presenting himself to be so carried, a contract was completed.

There is nothing in any part of the act indicating that the words "contract, express or implied," were used in other than their natural and ordinary sense. Such sense is not qualified in any way by the statutes, which counsel for the appellants contend have given a legislative construction to these words. While it is true that actions of trespass *vi et armis* for an injury to the person and actions on the case are not within the jurisdiction of a justice of the peace, we know of no reason why such magistrate has not jurisdiction of an action for a breach of contract of carriage resulting in an injury to the passenger, where the amount claimed does not exceed his jurisdiction. Whether a plea of set-off would be sustained to such action or whether the time limited for the commencement thereof is two or five years we do not decide, but it is very clear that neither the legislature nor the courts have given to the expression, "contracts, express or implied," any technical or limited meaning other than the words naturally bear. The municipal court rightly held that the act conferred jurisdiction of this action.

Appellants contend that under this construction so much of the act as gives the municipal court jurisdiction of actions on contracts, express or implied, where the amount

claimed by the plaintiff exceeds $1000, is contrary to the constitution of the State and the fourteenth amendment to the constitution of the United States, because it is class legislation and because it denies equal rights and privileges to persons having the same rights under the law. The act applies to every individual and corporation and to every contract, in a suit involving the requisite amount. The legislature was required to define the jurisdiction of the court. The basis adopted, so far as the question here involved is concerned, was the amount claimed and the kind of action. In regard to the kind of action the statute conferred jurisdiction in all cases for the recovery of money only, and we see no reason why this was not a legitimate exercise of the legislative power. In regard to the amount, $1000 was adopted as the line of demarcation, and to confer jurisdiction the amount claimed in actions on contracts must exceed that sum and in all other actions must not. The character of the wrong done or of the breach of the contract has nothing to do with the question of jurisdiction. If the suit is for the recovery of money only, the court has jurisdiction, subject to the limitation as to the amount claimed. If the contract alleged in the declaration in this case had been an express one, signed by the parties, no question as to the jurisdiction could have arisen. But if the existence of a contract is a proper basis for conferring jurisdiction it cannot be material whether such contract is express or implied, and it cannot be class legislation or a denial of equal rights if the statute conferring jurisdiction applies to all cases on contracts.

The judgment is affirmed.          *Judgment affirmed.*