# Mary M. Arnold, Appellee, v. William E. Dodson, Appellant.

## Gen. No. 20,309.

1. ASSUMPSIT, ACTION OF, § 6*—*when action to recover back purchase price of stock is.* An action to recover the consideration paid for shares of stock on the ground that the purchase was induced by false representations is an action in assumpsit and not in tort.

2. MUNICIPAL COURT OF CHICAGO, § 8*—*when jurisdiction not limited to $1000.* The Municipal Court of Chicago has jurisdiction of an action to recover the consideration paid for shares of stock on the ground that the purchase was induced by false representations, although the amount involved exceeds $1,000.

3. ASSUMPSIT, ACTION OF, § 89*—*when evidence sufficient to support verdict.* Evidence in action to recover consideration paid for shares of stock, examined and *held* to support the verdict.

4. ASSUMPSIT, ACTION OF, § 92*—*when instruction proper.* In an action to recover the consideration paid for shares of stock, the purchase of which was alleged to have been induced by defendant's false representations, *held* that in view of the evidence it was not error to instruct the jury that: "Statements by a seller merely descriptive of the operation and utility of an invention or patented article, and statements as to anticipated profits or future earnings on dividends and as to the future success of business ventures are regarded as expressions of opinion, or 'puffing,' or 'dealer's talk' upon which a person cannot base charges of fraud. No statement of one's opinion as to what will or will not happen or exist in the future can affect a contract or render it void. Every person in making a contract is at liberty to speculate or express opinions as to future events and he cannot be held to answer for their truth or falsity."

5. EVIDENCE, § 471*—*what degree of proof required of plaintiff in civil action.* In an action to recover the consideration paid for shares of stock, the purchase of which is alleged to have been induced by defendant's false representations, plaintiff is required to prove his case by a preponderance of the evidence and not by proof beyond a reasonable doubt.

6. APPEAL AND ERROR, § 523*—*when objection to be made to giving of oral instruction.* Defendant cannot be heard on appeal from the Municipal Court of Chicago to object to the giving of instructions below, where he has failed to comply with the rule of the Munici-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

pal Court requiring objections to the giving or refusing of oral instructions to be made immediately upon the conclusion of the charge and before the jury retire.

7. Appeal and error, § 1521*—*when refusal to require jury to answer special interrogatories harmless.* The refusal to submit special interrogatories to the jury is not reversible error where it appears that if the interrogatories calling for ultimate facts had been submitted and answered, the general verdict would have been unchanged.

Appeal from the Municipal Court of Chicago; the Hon. John D. Turnbaugh, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed June 10, 1915. Rehearing denied June 28, 1915. *Certiorari* denied by Supreme Court (making opinion final).

Aldrich & Aldrich, for appellant.

David K. Tone, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

This is an appeal from a judgment obtained by Mary M. Arnold, hereinafter called plaintiff, against William E. Dodson, defendant, in the Municipal Court of Chicago.

The plaintiff's statement of claim alleges that on the sixth day of November, 1911, she purchased from the defendant fifty shares of the capital stock of the National Machine Recorder Company (hereinafter referred to as the Recorder Company) for the sum of $3,150; that she was induced to make such purchase because the defendant falsely represented to her that the machines manufactured by the Recorder Company were beyond the experimental stage; that said company for about a year prior thereto had been manufacturing and selling nine machines per day for $900 each; that the International Harvester Company had purchased a number of said machines and was well

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

satisfied with them; that said company was earning large profits and dividends on its stock by selling its machines; that its business was in a prosperous condition and by the first of January, 1912, the earnings and surplus would be sufficient to enable the company to pay a dividend of 50 per cent. on its capital stock, and that the defendant represented that he had invested $500,000 of his own money, practically all he had, in the stock of the Recorder Company. The statement of claim further averred that on the eighteenth day of July, 1912, the plaintiff was induced to and did purchase from the defendant 300 more shares of the stock of the Recorder Company for $1,600; that said purchase was induced by substantially the same false representations.

The statement of claim further alleged that on the first day of March, 1912, the plaintiff loaned to the Universal Motor Company (hereinafter referred to as the Motor Company) $5,000; that the defendant induced the plaintiff to loan this money and accept as security therefor $10,000 in par value of the stock of said Motor Company and a bill of sale of two motor trucks, by falsely stating to the plaintiff that the stock of the Motor Company had nearly all been subscribed for by responsible people; that the company wanted to exhibit its motor trucks and was in need of ready money; that the subscriptions had not been paid; that the company had a factory in which it was then manufacturing motor trucks and that it was a responsible concern; that on the twenty-eighth day of August, 1912, the defendant stated to the plaintiff that he had collected the $5,000 from the motor company and advised the plaintiff to invest said money in stock of a corporation known as the United Motor Equipment Company (hereinafter referred to as the Equipment Company); that the plaintiff did accept $5,000 in par value of the stock of the Equipment Company in payment for said $5,000 loan to the Motor Company; that

she was induced to accept said stock of the Equipment Company because the defendant falsely stated to the plaintiff that the stock of the Equipment Company was all owned by his own family and one or two intimate friends; that $50,000 in cash had been paid into said company on account of its stock; that that was all the money the company needed to exploit its invention; that the company would not issue or sell any more stock to anyone; that the company was the owner of a patent invention on an automobile starter; that it owned a factory on the north side and was then ready to manufacture automobile starters.

The plaintiff's statement of claim further avers that on or about the third day of October, 1913, she discovered that the foregoing representations made by defendant were false and untrue; that she tendered to the defendant all the shares of the capital stock and the consideration received, and demanded the return of her money, but the defendant refused to accept such stock and to return her money.

To this the defendant filed an affidavit of defense alleging a defense to the whole of the plaintiff's demand, and further admitted that the plaintiff bought the several corporations' stocks at and for the price set forth in the plaintiff's statement of claim, and at or about the several dates given in said statement of claim. The defendant also admitted that the plaintiff made the loan to the Universal Motor Company at the date named, and afterwards exchanged the note of the Universal Motor Company given to secure the payment of said loan, together with the collateral attached thereto and the bill of sale of the two motor trucks also held as security for said note, for stock of the United Motor Equipment Company. The defendant denied that said plaintiff made such purchases of stock, or any of them, said loan or said exchange, relying upon the representations of said defendant, in her statement of claim, or any such representations. The defendant denied

that he made, or authorized others to make, the representations set out in the statement of claim, or any or either of them, or any representations of any kind.

Upon the trial the jury returned a verdict against the defendant for $8,854.56, upon which judgment was entered.

Defendant urges as his first point upon this appeal that the court below had no jurisdiction of this cause, which was in tort, and the amount claimed exceeded the sum of $1,000. We do not think this point is well taken. Plaintiff's action is not in tort but in assumpsit, to recover back the consideration paid under inducements said to be false. Cases in point are: *Allen v. Hart*, 72 Ill. 104; *Citizens' Gaslight & Heating Co. v. A. O. Granger & Co.*, 118 Ill. 266; *May v. Disconto Gesellschaft*, 211 Ill. 315. The Municipal Court Act of 1913, sec. 1, div. 2 (J. & A. ¶ 3314), provides that the court shall have jurisdiction of "all actions on contracts, express or implied, and actions on judgments when the amount claimed by the plaintiff, exclusive of costs, exceeds one thousand dollars." We read the opinions in *Harty Bros. & Harty Co. v. Polakow*, 237 Ill. 559, and *Chudnovski v. Eckels*, 232 Ill. 312, as holding that under this section of the statute the Municipal Court has jurisdiction in all cases, the amount claimed exceeding $1,000, where an action in assumpsit would lie at common law. We will not depart from what we understand to be the decision in these cases.

It might be said parenthetically that the machine which the Recorder Company was promoting was a device which could be attached to each piece of machinery in a shop and connected electrically with a registering device in the office which made a record of the running time of each machine. As the details of the device are not in controversy no further description is necessary.

Is the verdict contrary to the weight of the evidence? The jury heard the plaintiff testify substantially that

in November, 1911, she met the defendant, who stated to her that the machine of the Recorder Company was not an experiment but was perfect; that the International Harvester Company "had bought and was using them and was well satisfied with them;" that the machine cost $150 to manufacture and sold for $900; that the defendant had invested practically his own fortune, $500,000, in it; that he gave her a card containing figures which he said was a conservative estimate of what the invention would earn and did already earn and was earning, and that he had made fortunes for various people. The figures on the card indicated that the Recorder Company would make an annual profit of 125 per cent. on its capital stock. Plaintiff further testified that defendant stated to her that the company "was earning at least 20 or 30 per cent. a month," and further that "they had been earning these large sums of money for over a year," and that the company was in a very prosperous condition and "had a large amount of money in the bank" and that the company would pay a dividend of 50 per cent. the first of the following year; that relying on such statements she purchased from the defendant fifty shares of the capital stock of the Recorder Company, for which she paid him the sum of $3,150. In January of the next year, plaintiff went with a friend to the office of the defendant and inquired about the dividends. Defendant then stated to her that they had expended the money that had been earned in making certain changes in the device, but that they could expect a dividend soon. He repeated in this interview the statement that the International Harvester Company had bought a large number of these machines and was well pleased with them, and also that they were selling the machines for $900.

Plaintiff further testified that in the summer of 1912 she was induced to and did buy 300 more shares of the Recorder Company's stock for the sum of $1,500. The

evidence as to this particular purchase indicates circumstances materially different from those surrounding the first transaction, and the jury did not allow plaintiff any recovery on account of this second purchase. As plaintiff has assigned no cross-error thereon, and as of course defendant is not complaining, it is unnecessary to narrate the details of this particular transaction. From our examination of the evidence we are of the opinion that the conclusion of the jury that plaintiff was not entitled to recover this sum of $1,500 from the defendant was correct.

Plaintiff further testified that on March 1, 1912, the defendant asked her to make a loan to a company called the Universal Motor Company. It appears that this company was incorporated under the laws of Colorado in the year 1908 with a capital stock of $5,000,000. Apparently the only property it had of any value was a patent for the manufacture of motor trucks. The $5,000 in question was paid by plaintiff's check, which was deposited to defendant's personal credit. Defendant stated to plaintiff that the company wanted a temporary loan of $5,000 for sixty days, and that they would give her as security ten shares of stock of the Motor Company and a bill of sale of two motor trucks; that the company was prosperous and "had a factory and were manufacturing those motor trucks." It seems to be uncontradicted that this statement concerning the Motor Company was untrue. The Motor Company did not own a factory and was not engaged in the manufacture of trucks; it was not a prosperous concern and it had never received any money from any source except from the sale of stock. When plaintiff made the loan she received a note of the Motor Company due in sixty days. At the end of this time the defendant stated to her that the company was a little slow, that the note would be paid in a short time, and suggested an extension of sixty days, to which plaintiff

assented. When plaintiff again called at defendant's office she was told by him that the Motor Company had paid him the $5,000, whereupon plaintiff gave up the security which she received on the loan. Defendant did not return her money to her but advised her to take stock for it in another concern called the United Motor Equipment Company, which he described as a "family affair," composed of himself, his two brothers, his mother and his sister, and two outsiders; that it was about to start in the manufacture of automobile starters; that the capital stock of $50,000 had all been subscribed for and paid and that the company had a factory on the north side and was manufacturing the starter; that it had paid $11,000 for this building on the north side and that it had bought expensive machinery and had bought the patent for the starters and was manufacturing them. Defendant stated that an offer had been made by an outsider to buy $50,000 worth of this stock, but none of it was for sale. Relying upon his representations plaintiff accepted $5,000 in par value of the stock of the Equipment Company in payment for said $5,000 loaned to the Motor Company.

Plaintiff further testified that she did not discover the truth or falsity of these statements until in October, 1913, having prior thereto believed the statements to be true; that after she discovered the falsity of the statements she tendered back the stock and demanded the money, which tender was refused by the defendant. Without narrating the details, it is sufficient to say that the evidence shows that the statements of the defendant, presuming them to have been made by him as to the property and business of the three corporations above mentioned, were untrue, and the jury were warranted in believing them to be false representations to induce plaintiff to part with her money. We have in mind only representations as to past or existing material facts and not what is called "puffing" or "dealer's talk."

The defense relied upon is that defendant made no representations concerning the property of these corporations, their business or their earnings, either past or prospective. The jury considered the denials by the defendant of the representations testified to by the plaintiff, also the attempted impeachment of the plaintiff, and the testimony and circumstances claimed by respective counsel to corroborate or contradict the statements of each of the principals respectively. It appears from the verdict that the jury were of the opinion that the plaintiff had sufficiently proven her claims as to the purchase of stock in November, 1911, for $3,150, and as to the loan of $5,000 in 1912, and the transaction in connection with the stock of the Equipment Company. After giving consideration to the conflicting testimony and to what is said by counsel, we are of the opinion that we would not be justified in disturbing the conclusion of the jury. An important feature in reaching a determination on the facts was the credibility of the witnesses, and as the jury were peculiarly qualified to determine this we must defer to their opinion in this respect.

There is no reversible error in the rulings on evidence.

The court instructed the jury that:

"Statements by a seller merely descriptive of the operation and utility of an invention or patented article, and statements as to anticipated profits or future earnings on dividends and as to the future success of business ventures are regarded as expressions of opinion, or 'puffing,' or 'dealer's talk' upon which a person cannot base charges of fraud. No statement of one's opinion as to what will or will not happen or exist in the future can affect a contract or render it void. Every person in making a contract is at liberty to speculate or express opinions as to future events and he cannot be held to answer for their truth or falsity."

This stated the law as favorably to the defendant as he was entitled to, and tended to correct any slightly

doubtful or ambiguous words in other parts of the oral instructions.

Plaintiff was required to prove her case by a preponderance of the evidence, and the instruction to that effect was proper. This is not a criminal case, and proof beyond a reasonable doubt was not required. *Grimes v. Hilliary,* 150 Ill. 141; *Flannery v. People,* 225 Ill. 62; *People v. Sullivan,* 218 Ill. 419.

It might also be said that defendant cannot be heard to object now to the instructions, as he failed to comply with the requirements of rule 8 of the Municipal Court (properly preserved in the record for our inspection) which are that "objections to the giving or refusing of oral instructions to the jury must be specific and must be made immediately upon the conclusion of the charge and before the jury retire." See also *Pecararo v. Halberg,* 246 Ill. 95.

Must the judgment be reversed because of the refusal of the court to require the jury to answer the special interrogatories submitted by the defendant? Our answer is in the negative. The test of the inquiry is this: Assuming all of the interrogatories to have been answered most favorably to the defendant, and the remaining facts not embraced in the interrogatories found favorably to the plaintiff, would the special findings change the general verdict? *Chicago & N. W. Ry. Co. v. Dunleavy,* 129 Ill. 132; *Chicago Anderson Pressed Brick Co. v. Reinneiger,* 140 Ill. 334. There were thirty-four interrogatories submitted by the defendant, and in form they resemble an examination of the jury as to the evidentiary facts appearing on the trial. After inspecting these interrogatories we are of the opinion, applying the rule just stated to such interrogatories as call for ultimate facts, that if they had been submitted and answered the general verdict would remain unchanged. Therefore it was not error to refuse them.

Other points made by defendant, including his alleged tender during the trial, are without prevailing merit.

As we cannot hold the verdict to be manifestly against the weight of the evidence, and as no reversible errors appear to have been committed on the trial, the judgment is affirmed.

*Affirmed.*