## Herbert Hinchliffe for use of Carson, Pirie, Scott & Company, Appellee, v. Wenig Teaming Company, Appellant.

### Gen. No. 20,907.

1. CARRIERS, § 139*—*when evidence sufficient in action for loss.* In an action to recover for loss of goods which defendant contracted to transport for plaintiff for hire, but which it never delivered, where the horses and truck used to transport the goods in question were not owned by defendant, but hired by it from another, *held* that the evidence, though conflicting, was sufficient to support a ver-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

dict and judgment for plaintiff, in that such evidence sufficiently showed that the teamster who drove the team in question was employed by the defendant.

2. INSTRUCTIONS, § 115*—*when refusal of instruction as to issue not involved proper.* In an action to recover the value of goods which defendant contracted to transport for plaintiff, but never delivered, where the court instructed the jury, in substance, that one who contracts to transport goods for hire is liable for the safe carriage of the goods, though he hired the horses and wagon by which such goods were transported, *held* not prejudicial error to refuse to give an additional instruction, which was substantially that the test of the employment of a servant was the right of the master to discharge, pay or control the servant, the trial court giving as a reason for his refusal to give the instruction that the question involved in the instruction requested was not in issue.

3. CARRIERS, § 138*—*when evidence as to value of lost goods admissible.* In an action to recover the value of goods which defendant contracted to transport for plaintiff, but never delivered, *held* not error to deny a motion to strike out testimony as to the market value of a portion of the goods in question.

4. PLEADING, § 259*—*when amendment changing cause of action allowed.* In a first-class action under paragraph 1, sec. 2, of the Municipal Court Act (J. & A. ¶ 3314), to recover for property lost in transportation, where the record shows leave granted to amend the form of the action by changing it from an action on the case to one of assumpsit and where the amendment for which leave was granted was actually filed, *held* that the court had jurisdiction to enter a judgment on a verdict against defendant on its implied contract to transport the property safely.

5. PLEADING, § 250*—*when amendment at close of case allowed.* An amendment in a civil action by changing the form of the action from tort to assumpsit after both sides had rested and before verdict, *held* properly allowed under section 30 of the Practice Act (J. & A. ¶ 8576), providing that such amendments may be allowed in a civil action at any time before verdict.

6. PLEADING, § 271*—*when defendant to plead to amended declaration.* Where the court grants leave to plaintiff to amend by changing the form of action from case to assumpsit, and requires defendant to plead instanter thereto, defendant is not required to plead before the amendment allowed is actually filed.

7. APPEAL AND ERROR, § 1677*—*when failure to file amendment waived.* Where a defendant is required by the court to plead instanter to an amendment which plaintiff has leave to file, and does so plead before such amendment is actually filed, he thereby precludes himself from invoking the rule that under such circumstances

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the Appellate Court on review cannot regard such an amendment as having been actually filed.

Appeal from the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed October 5, 1915. Rehearing denied October 15, 1915.

**Statement by the Court.** On January 19, 1910, the plaintiff, Herbert Hinchliffe, for use, etc., commenced a first-class action in the Municipal Court of Chicago against Wenig Teaming Company, a corporation, defendant, "of a plea of *trespass on the case.*" The declaration as originally filed consisted of two counts. The first count was as follows:

"For that whereas, on, to-wit, the fourth day of January, 1910, the defendant was the owner, proprietor and was conducting and operating the business commonly known as the express and teaming business, in and about the City of Chicago, County of Cook and State of Illinois, *and was a common carrier of goods and chattels for hire.*

"Said plaintiff avers that on, to-wit, the said fourth day of January, 1910, in said city, county and state aforesaid, the plaintiff caused to be delivered to the defendant, and the defendant by its agents and servants in that behalf then and there received from the plaintiff certain bales, packages and boxes containing divers goods, chattels and merchandise, to-wit:   six (6) cases and five (5) bales or packages containing the following merchandise (enumerating same) of the plaintiff of the value of, to-wit, $1,292.77, to be safely and securely carried by the defendant from a certain warehouse of the plaintiff to a store or wholesale house of the plaintiff in the City of Chicago aforesaid, for a certain reward to the defendant in that behalf.

"Plaintiff further avers, that in consideration of the premises it then and there became and was the duty of said defendant to safely handle, care for and deliver the aforesaid bales, packages, boxes and merchandise

to its destination as aforesaid and in the meantime to take due and proper care thereof.

"Yet the said defendant, by its agents and servants, did not regard its duty in that behalf, but on the contrary thereof so carelessly, negligently and improperly conducted itself in and about the premises that by and through the negligence, carelessness and default of the said defendant, by and through its servants and agents, the said bales, packages, boxes and merchandise and the contents thereof, being of the value of $1,292.77, after the delivery thereof to and receipt by the said defendant by its servants and agents in that behalf as such carrier, became and were wholly lost to the plaintiff, * * * to the damage of the plaintiff in the sum of $1,310.03, and therefore the plaintiff brings this suit, etc."

The first, second and third paragraphs of the second count were the same as the corresponding paragraphs of the first count. The fourth paragraph of the second count was as follows:

"Yet the said defendant, by its agents and servants did not regard its duty in that behalf, but on the contrary thereof so carelessly, negligently and improperly conducted itself in and about the premises that by and through the negligence, carelessness and default of the said defendant, by and through its servants and agents, the said bales, packages, boxes and merchandise and the contents thereof, being of the value of $1,292.77, after the delivery thereof to and receipt by the said defendant, by its servants and agents in that behalf *as such carrier,* were wrongfully and unjustly taken and carried away by some person or persons to the plaintiff as yet unknown, and were and still are thereby wholly lost to the said plaintiff, to the damage of the plaintiff in the sum of $1,310.03, and therefore the plaintiff brings this suit, etc."

On February 7, 1910, the defendant filed a plea of not guilty to the declaration. On February 2, 1914, the cause came on for trial before a jury. On the same day the plaintiff asked leave to amend the second count by striking out the allegation in the first paragraph of

said count that the defendant "was a common carrier of goods and chattels for hire," and also by striking out of the fourth paragraph of said count the words "as such carrier," and the court ordered that such leave be granted and that defendant's plea of not guilty stand as a plea to the declaration as amended. No amendment was then made to the first count. The bill of exceptions shows that on the morning of February 5, 1914, after all the evidence had been heard, the defendant moved that the court instruct the jury to find the defendant not guilty, but the motion was denied; that thereupon, in chambers, the court gave plaintiff leave "to change the form of action to assumpsit," and also gave plaintiff leave to amend his declaration by adding to the fourth line, after the words "trespass on the case," the words "on promises," and at the end of each of the first and second counts by striking out the words "to the damage of the plaintiff in the sum of $1,310.03, and therefore the plaintiff brings this suit, etc.," and inserting in lieu thereof the following words:

"Whereby said defendant became liable to pay said plaintiff said sum of money, and in consideration thereof the defendant well and truly promised to pay the same; nevertheless said defendant, not regarding said promise, refused and still does refuse to pay same; to the damage of said plaintiff in the sum of $1,650."

The bill of exceptions further shows that to all of the above rulings the defendant duly excepted, and that thereupon the following proceedings were had:

"Whereupon, a rule was entered on the defendant to plead to said declaration, as amended, instanter, to which ruling of the court the defendant * * * objected and excepted.

"Counsel for defendant was given all day, February 5, 1914, in which to plead to said declaration as amended.

"The Court: 'The record will show that *by agreement* the defendant may present any defense under the general issue that might have been presented under any special plea, if pleaded.'

"Mr. Croarkin (attorney for defendant): 'I will except to the ruling of the court, but, of course, I will have to do what the court has directed, and I will get that in some time today, subject to my objection.'

"The Court: 'All right.'

"Counsel for defendant requested the court to instruct the jury to find *the issues joined* for the defendant; which motion was overruled, to which ruling the defendant * * * excepted.

"Which was all the evidence offered or received upon the hearing of the above entitled cause."

The bill of exceptions further shows that the court then proceeded to instruct the jury orally. During the course of the charge the court said:

"The court further instructs the jury, if you believe from a preponderance of the evidence that the plaintiff requested the defendant, the Wenig Teaming Company, that it send a team to the warehouse of Carson, Pirie, Scott & Company to carry a load of goods for hire, and that said defendant, the Wenig Teaming Company, agreed to supply such team for such purpose; and if you further believe from the evidence that the defendant company caused such team to be sent to the warehouse of Carson, Pirie, Scott & Company, in pursuance of such agreement; and if you further believe from the evidence that the goods in question were delivered to the driver of a team supplied by the Wenig Teaming Company; and if you further believe from the evidence that the goods in question were never delivered as directed, or redelivered, to Carson, Pirie, Scott & Company, then the burden is on the defendant to show, by a preponderance of the evidence, that the loss of such goods was not caused by a want of reasonable care on its part of the goods in question.

"You are further instructed, that if you believe from the evidence that the plaintiff supplied the defendant with a team to transport the goods in question,

the defendant does not relieve itself from the responsibility of safely carrying such goods, by employing some other person to actually do the carrying or by securing the team to do the work from some other person; so that, even though you believe from the evidence that Mr. Guthmann, or his company, furnished the wagon and horses in question, yet if you further believe from the evidence that such wagon and horses were supplied at the request and procurement of the defendant, the liability and duty of the defendant toward the goods would be the same as though it had been the horses' and wagon of the defendant; on the contrary, if you believe from the evidence that the plaintiff did not employ the defendant, the Wenig Teaming Company, to transport the goods in question, but did employ Mr. Guthmann, or any other person, to so transport them, you should find the issues against the plaintiff.''

At the conclusion of the charge defendant's attorney objected to that portion of the charge above set forth as "inaccurate and incomplete," and requested the court to further instruct the jury that "the test of employment of a servant by a master is whether or not such person has a right to discharge, pay or control the course or direct the conduct of the servant." The court refused so to do, on the ground that "it is not a question whether Guthmann or the Wenig Teaming Company hired him (Moran); if the Wenig Teaming Company did not, they are not liable; if they did, they are liable.''

The jury returned a verdict on February 5, 1914, finding the issues against the defendant and assessing plaintiff's damages at the sum of $1,292.77.

The common-law record shows that on the same day, February 5, 1914, the defendant *filed a plea of the general issue in assumpsit*. Said record, however, does not show that at any time plaintiff *actually filed* an amendment to the declaration, in pursuance of the leave granted him as above shown in the bill of exceptions.

On March 7, 1914, the court, after overruling the defendant's motions for a new trial and in arrest of judgment, entered judgment on the verdict against the defendant for $1,292.77, which judgment the defendant by this appeal seeks to reverse.

Francis E. Croarkin, for appellant.

Louis Ziv and F. S. Loomis, for appellee.

Mr. Presiding Justice Gridley delivered the opinion of the court.

Counsel for defendant contends that the verdict and judgment are not supported by the evidence. No point is made that the verdict is excessive. While the testimony of some of defendant's witnesses is in sharp conflict with the testimony of plaintiff's witnesses in some particulars, plaintiff's evidence discloses, in substance, the following facts: The plaintiff, Hinchliffe, was and had been for twenty years engaged in the teaming business in Chicago. He had an arrangement with Carson, Pirie, Scott & Company to do certain teaming and hauling for them and to provide for them as many teams each day as they should notify him on the preceding day they would desire. Occasionally, when he was short of teams, he would telephone defendant, or other parties engaged in the teaming business, to furnish teams to make up the necessary number. The defendant, Wenig Teaming Company, was also engaged in the teaming business in Chicago, hauling merchandise from depots to warehouses and from warehouses to stores, and "ready to do business for any one who asks our aid and is ready to pay the money for it." On January 3, 1910, Carson, Pirie, Scott & Company notified Hinchliffe that they would need on the following day more teams than he had available and about five o'clock on the afternoon of that day he telephoned George Wenig, secretary and

treasurer of defendant, and asked how many teams defendant could furnish plaintiff, and Wenig promised three teams for the next morning to go to warehouse ''C'' of Carson, Pirie, Scott & Company. On the morning of January 4th, said teams not having arrived at said warehouse, Hinchliffe telephoned Wenig and the latter said that he had sent only one team to the warehouse. Later in the morning Hinchliffe again telephoned Wenig that said team had not arrived, to which Wenig replied that the team was on the way. Later in the day Hinchliffe again telephoned Wenig, saying that the team had been to the warehouse, had got its load of merchandise, but that the team and merchandise had not yet arrived at the wholesale store of Carson, Pirie, Scott & Company, and asked if the teamster had been properly instructed, to which Wenig replied that the teamster was working and that the team would arrive all right. About four o'clock in the afternoon, the team not having arrived at said store, Hinchliffe again telephoned Wenig and advised him of that fact, to which Wenig replied that the team belonged to the Guthmann Transfer Company, that evidently something was wrong and that Hinchliffe had better communicate with said transfer company. The teamster never delivered said merchandise to the wholesale store, or any store, of Carson, Pirie, Scott & Company, and the teamster and merchandise disappeared. The horses and empty truck were found the same night on the west side of the city near certain railroad tracks. Richard Guthmann, a witness for plaintiff, testified, in substance, that in January, 1910, he was engaged in the general teaming business in Chicago under the name of Guthmann Transfer Company; that he had been accustomed to furnish teams and trucks by the day to the defendant for a consideration; that early in the morning of January 4th, the defendant telephoned him and requested the use of a team of horses and truck; that he ordered an assistant to get a team

and truck ready for defendant; that subsequently a teamster, not in his employ and giving his name as "Moran" and having a slip of paper or order from the defendant, called upon him; that he saw said teamster take said team and truck out of his barn and yard; that he gave him no instructions; and that subsequently he rendered a bill to the defendant for the use of said team and truck on said day and that the bill was paid. Adolph Ackerbloom, a witness for plaintiff, testified, in substance, that he was foreman at said warehouse "C"; that a teamster, giving his name as "Moran," called on him at said warehouse on the morning of January 4, 1910, and that the merchandise in question was delivered to him and loaded upon the truck. We are of the opinion that the verdict and judgment are sufficiently supported by the evidence. And we think that the evidence sufficiently discloses that the teamster, Moran, was employed by the defendant, and not by Guthmann as contended by counsel for defendant.

And we do not think that under the facts as shown by the evidence there is any merit in the contention that the trial court committed prejudicial error in refusing to add to the oral charge the additional instruction asked for by defendant's attorney, as mentioned in the above statement of the case. Neither do we think that the court erred in refusing to strike out the testimony of certain of plaintiff's witnesses as to the market value of certain portions of the merchandise in question.

It is further contended by counsel for defendant that the court erred in denying defendant's motions, made at the close of plaintiff's evidence and again at the close of all the evidence, to instruct the jury to find the defendant not guilty, and for the reason that, as the action as originally commenced was a first-class action *in tort* and not for the *conversion* of personal property, the trial court had no *jurisdiction* to hear the case under the provisions of clause 3 of paragraph 1 of sec-

tion 2 of the Municipal Court Act (J. & A. ¶ 3314). It does not appear from the record that at any time before or during the trial the question of the *jurisdiction* of the court of the subject-matter was in any manner raised. To the declaration *in case* to recover damages for defendant's negligence in causing the loss of certain merchandise, defendant filed a plea of not guilty. It further appears that after both parties had rested, and after the court had denied defendant's motions to instruct the jury to find the defendant *not guilty,* the plaintiff was given leave to change the form of action to assumpsit and to amend his declaration accordingly. It was not improper for the court to allow this to be done at any time before final judgment. (Section 39, Practice Act, J. & A. ¶ 8576). It further appears from the *bill of exceptions* what particular amendments to the declaration plaintiff would be allowed to make, but it does not appear from the *common-law record* that plaintiff actually filed with the clerk of the court a formal amendment to his declaration in accordance with the leave given him by the court. Had this been done, we are of the opinion that the declaration as amended would have been sufficient after verdict to have sustained the verdict and judgment against the defendant on its *implied contract* to carry the merchandise in question safely (3 Hutchinson on Carriers, sec. 1403; *Chudnovski v. Eckels,* 232 Ill. 312, 318, and that the court had jurisdiction to enter the judgment (*Chudnovski v. Eckels, supra*). We are aware of the decisions of our Supreme Court in the cases of *Wisconsin Cent. R. Co. v. Wieczorek,* 151 Ill. 579, 583, *Ogden v. Town of Lake View,* 121 Ill. 422, and other subsequent cases. In the *Wieczorek* case, *supra,* it was decided, in substance, that where a plaintiff obtains leave of the trial court to amend his declaration, and this leave, together with the words of the amendment and where they are to be placed in the pleading, are shown by the bill of exceptions but he failed to make

the amendment, a court of review cannot treat the amendment as having been made. Counsel for defendant does not cite any of these cases, or urge the particular point decided in those cases as a reason for the reversal of the judgment. He states in his written brief that the case had been tried, under a declaration in tort, as a tort case, that the testimony was all in, and that "it was manifestly unfair, because it was entirely unexpected," for the trial court "to give leave to plaintiff to file a declaration in assumpsit, which he did not do, to change the form of action to assumpsit, and to add to and strike out words in the declaration on file, over the objection of the defendant, and to then rule defendant to plead to said declaration as amended instanter over defendant's objection, even though the court then suggested that defendant might at that late date present any evidence under the general issue that might have been presented under any special plea, if pleaded." It appears from the bill of exceptions that after the court had entered a rule upon the defendant to plead to the declaration, as amended, the defendant was given all day, February 5, 1914, in which to plead, and that *by agreement* the defendant was given leave to present any further defense, but it does not appear that he attempted to do so or gave any reason why he could not do so. It further appears from the *bill of exceptions* that, while excepting to the rulings of the court, defendant's attorney stated in effect that he would file a plea of the general issue in assumpsit some time during the day, and that thereafter defendant's attorney requested the court to instruct the jury "to find *the issues joined* for the defendant," which motion the court denied. And the *common-law record* shows that during said day the defendant did actually file with the clerk a plea of the general issue in assumpsit. Although the court had entered a rule upon defendant to file a plea in assumpsit, he was not obliged to file such a plea until after the declaration had been actual-

ly amended in accordance with the leave granted, but instead of waiting until this was done, defendant filed his plea in assumpsit, and thereby treated the declaration as actually having been amended in accordance with the leave granted. In our opinion, under the facts disclosed in the present case, the rule announced in the *Wieczorek* case, *supra,* should not here be applied. We think that the defendant is in no position in this court to urge that the judgment should be reversed, defendant having filed a plea of the general issue in assumpsit. *Wrought Iron Bridge Co. v. Commissioners of Highways,* 101 Ill. 518, 520; *Illinois Steel Co. v. Hanson,* 195 Ill. 106, 107; *American Home Circle v. Schneider,* 134 Ill. App. 600, 602.

For the reasons indicated the judgment of the Municipal Court is affirmed.

*Affirmed.*