(No. 21416.—)

MARY KELLER, Plaintiff in Error, *vs.* THE INDUSTRIAL
COMMISSION *et al.*—(WILLIAM KELLER, Defendant in
Error.)

*Opinion filed October 22, 1932—Rehearing denied Dec. 9, 1932.*

DEYOUNG, J., dissenting.

CHARLES V. FALKENBERG, for plaintiff in error.

WINSTON, STRAWN & SHAW, (JOHN D. BLACK, HAR-
OLD A. SMITH, GEORGE B. CHRISTENSEN, and FRANK B.
GILMER, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The sole question presented by this record is whether a
mother who is dependent upon her son for her support is
entitled to compensation from his employer for his death
occasioned by an accident in the course of his employment

and arising out of it, the employer being her husband and her son's step-father.

The plaintiff in error, Mary Keller, is the wife of William Keller, defendant in error, against whom on November 7, 1929, she filed a petition with the Industrial Commission for compensation for the death of her son, Edward Keller, on June 30, 1929. On January 30, 1930, she filed another petition, claiming compensation for the death of another son, Thomas Keller, on January 11, 1930. The first petition was heard by an arbitrator on July 15, 1930, and the second on August 27, 1930, and on October 15, 1930, an identical award was made in both cases, "that petitioner, Mary Keller, is the wife of the respondent, William Keller, and is therefore barred from recovering compensation from respondent, William Keller." Petitions for review were filed, and the Industrial Commission on June 10, 1931, rendered its decision on each petition "that deceased left no persons entitled to compensation, and ordering that the respondent shall pay $300 into the special fund provided for in section 7, paragraph (e), and $150 for burial expense to the person paying that expense." Upon writs of *certiorari* sued out of the circuit court of Cook county the decisions of the Industrial Commission were confirmed, and on the petition of the claimant a writ of error has been allowed to review the record.

It appears from the evidence and by stipulation that Mary Lewinski, the widow of Peter Lewinski and the mother of three sons and a daughter, married William Keller and the sons assumed the name of their step-father. Edward Keller, one of the sons, was employed by his step-father, William Keller, and received an accidental injury arising out of and in the course of his employment, from which he died on June 30, 1929. His death was the subject of the first of the complaints filed with the Industrial Commission. Another of the sons, Thomas Keller, was employed by William Keller, and on January 6, 1930, he

also received an accidental injury arising out of and in the course of his employment, which resulted in his death on January 11, 1930, and on January 30, 1930, his mother filed the second complaint with the Industrial Commission. All the parties were operating under the provisions of the Workmen's Compensation act. The notices required by the act were given and proper claims were filed. The average weekly wages of each of the employees were $36.25.

The claimant offered the respondent as a witness in her behalf, and objection was made to his competency on account of his relation to the claimant, his wife. This objection was sustained. The claimant then made the following offer of proof: "That the witness now on the stand is the step-father of the deceased, Edward Lewinski Keller; that for several years prior to the death of the deceased he has been unable to work; that he was the owner of two teams, one of which the step-son was driving, and further, that he sustained an accident resulting in his death on the 30th day of June, 1929; that prior to that time the deceased, Edward Keller, had turned over to his mother the wages that he had received, at the rate of $36.25 per week; that the mother had no other means of income except the money turned over to her by her son, as her husband was not able to support her and did not support her for several years past, and that the witness was not in any position to earn any money which he could give to his wife for her support; that the only earnings which he [the witness] had for several years past was at the rate of about $11.75 for each working day, out of which was paid the salary of the driver, the feed of the horses, the insurance upon the teams, his license, and repairs to the vehicles and harness used in the course of his business as that of a garbage hauler. He worked for the city of Chicago and for which the above compensation was paid." Thereupon the respondent, by counsel, objected to the offer on the ground of the incompetency of the witness and also on the ground that the offer is

immaterial—that there can be no recovery under the Compensation act by a wife against her husband. The arbitrator stated: "The objection to the offer is overruled. The offer may stand." The effect of this was that the testimony of the witness was rejected because of his relation to the claimant, but the offer of the testimony remained in the record, with no ruling as to the competency of the facts offered to be proved.

The claimant then offered herself as a witness to prove the following facts: "That for several years prior to their death she was totally dependent, first upon Edward L. Keller, who died on June 30, 1929, and after his death was totally dependent upon Thomas L. Keller, her sons by a former marriage; that as a result of her former marriage there were born to her and to her deceased husband, Peter Lewinski, two boys, Edward Lewinski Keller and Thomas Lewinski Keller; that she would also testify that her husband, William Keller, has been unable to work for a great many years and did not work or contribute to her support in any way for a great many years; that the two sons turned over to her the salary that they earned doing the work of teamsters, amounting to $36.25, and that this money was used to buy food for the horses, her husband, herself and the two sons during their lifetime; that the only income, if any, her husband, William Keller, had, was the sum of $11.75 per day for each working day, received from the city of Chicago for each of the two teams, which teams were engaged in hauling garbage for the city of Chicago; that out of this money there was paid the salary of each of the drivers, amounting to $36.25 per week, the insurance, compensation insurance carried upon the teams, the feed, repairs, and maintenance of the horses and the vehicles, as well as the license fees assessed upon each team; that on account of the death of Edward Keller she had expenses in the sum of $30 for doctor bills, and the sum of $41.65 for hospital services, X-rays and other incidentals

incurred as the result of said accident, as well as nine dollars for the ambulance, charged to convey the said Edward Keller to the American Hospital; that in the case of Thomas Keller she was called upon and did expend the sum of $30 for medical and surgical services rendered to the deceased; that the deceased, Edward Lewinski Keller and Thomas Keller, were not legally adopted by herself as their mother and William Keller their step-father, and that the two sons were her sole and only support, and that out of the money that she received from the two sons she contributed to the support and maintenance of William Keller, her husband and the deceaseds' step-father." The same objection was made to this offer as to the previous offer, on the ground "that the witness is incompetent as to these matters, and that the matters are immaterial, inasmuch as a claim of this kind, of a wife against a husband, under the Compensation act, cannot stand." The objection was overruled in the same language as the overruling of the previous objection, with the statement, "The offer may stand." The attorney for the claimant then stated: "I want, also, to add that the witness would also testify, if allowed, that the work was done under and by virtue of a certain consent or an agreement entered into between William Keller and the city of Chicago, wherein the said William Keller was to furnish two teams and wagons in hauling garbage in a certain district or territory, for which services he received the sum of $11.75 per day for each day that the wagons were working," followed by the same objection by the respondent's attorney and the same ruling by the arbitrator, "Objection overruled. The offer will stand."

It was stipulated that the same offer and the same record should be made and should apply to both cases.

The defense offered by the respondent and sustained by the arbitrator, the commission and the court was, that a wife cannot be entitled to an award under the Workmen's

Compensation act against her husband for the death of her son, upon whom she was wholly dependent for her support, where the son was employed by the husband, both were operating under the act, and the son's death was caused by an accident which occurred in the course of his employment and arose out of it. This defense is not based upon anything in the language of the act, which is universal in its terms. Every employer in this State to whom the act applies, whether automatically or by election, is required to provide and pay compensation for accidental injuries sustained by any employee, arising out of and in the course of the employment, according to the provisions of the act, and is thereby relieved from any liability for the recovery of damages except as in the act provided. Every employer subject to the provisions of the act is required to (1) file with the commission a sworn statement showing his financial ability to pay the compensation provided for in the act; or (2) furnish security, indemnity or a bond guaranteeing the payment by the employer of the compensation provided for in the act; or (3) insure his entire liability to pay such compensation in some insurance carrier authorized, licensed or permitted to do such insurance business in this State, all policies of such insurance carriers insuring the payment of compensation under the act to cover all the employees and the entire compensation liability of the insured; or (4) make some other provision, satisfactory to the Industrial Commission, for the securing of the payment of compensation provided for in the act; and (5) upon becoming subject to the act, and thereafter as often as the commission may in writing demand, file with the commission, in the form prescribed by it, evidence of his compliance with the provisions mentioned in the act. The act further provides that in the event the employer does not pay the compensation for which he is liable, then the insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable

to pay to the employee, his personal representatives or beneficiary, the compensation required by the provisions of the act to be paid by such employer, and the insurance carrier may be made a party to the proceedings to which the employer is a party and an award may be entered jointly against the employer and the insurance carrier.

The defense is based upon the following propositions of law set forth in the brief of the defendant in error: (1) Except in so far as the common law disabilities of a wife have been modified by statute those disabilities still obtain in Illinois; (2) if the limitations of a wife under the common law are to be modified it must be by legislative action and not by judicial construction; (3) no statute provides that the wife may sue her husband in tort actions or for any statutory liability; (4) no provision of the Workmen's Compensation act authorizes a wife to sue her husband for compensation payable under the act; (5) this court has expressly held that a wife may not sue her husband under the Workmen's Compensation act.

A consideration of the first two propositions is not material to a discussion of the merits of this case. They have no application to the facts. The third proposition, in regard to the disability of the wife to sue her husband in tort actions or for any statutory liability, is also inapplicable to this case. "Sue," in this connection, means "to bring an action against;" "to prosecute judicially;" "to proceed legally to secure a right or redress a wrong." The method of proceeding to obtain an award under the Workmen's Compensation act is provided by the act itself, and is not an action at law, a suit in chancery or a judicial proceeding of any kind. The Industrial Commission is not a court, and neither the arbitrators nor the commissioners are judicial officers and the award entered is not a judgment. The commission is an executive board or administrative body charged with the duty of administration of the act under which it is appointed, to the end that the purpose of the

act to provide promptly, certainly and cheaply for the assessment and payment of the compensation required to be made by the employer shall be accomplished. Not only is the proceeding not judicial but no question of tort is involved. A tort is defined as a private wrong or civil injury, and before the passage of a workmen's compensation act an action by an employee against his employer for an injury was always an action of tort based on the wrongful act or negligence by the employer of some duty owed to the employee. This is not so under the Workmen's Compensation act, but the employer, no matter how free from neglect or fault of any kind he may be, is liable for every accidental injury received by an employee in the course of and arising out of his employment, and this even though the employee may have been guilty of such contributory negligence as would have barred him from any recovery under the former law of master and servant.

The liability of the employer, instead of being a liability in tort, is a liability imposed by law, and is rather in the nature of an implied contract by reason of the relation of the parties or the existence of an obligation or duty. The obligation imposed by the existence of a duty has been called an "implied contract." "Implied contracts," says Blackstone, "are such as reason and justice dictate, and which, therefore, the law presumes that every man has contracted to perform, and upon this presumption makes him answerable to such persons as suffer by his non-performance." In the sixth subdivision of his classification of implied contracts which arise from natural reason and the just construction of the law, Blackstone says: "The last class of contracts, implied by reason and construction of law. arises upon this supposition: that everyone who undertakes any office, employment, trust or duty contracts with those who employ or entrust him, to perform it with integrity, diligence and skill, and if by his want of either of those qualities any injury accrues to individuals they have their

remedy in damages by a special action on the case." Among the instances of implied contracts are mentioned those of the common inn-keeper to secure his guest's goods in his inn, of the common carrier to be answerable for the goods he carries, and of the common farrier that he shoes a horse well without laming him. In *Chudnovski* v. *Eckels,* 232 Ill. 312, it was held that the law presumes or implies a contract from the fact of receiving as a common carrier a passenger to carry for hire, and cases were cited from many jurisdictions recognizing the existence of a contract between carrier and passenger from the mere fact of the relation. The *Chudnovski case* sustains the jurisdiction in the municipal court of an action by a passenger for personal injuries under clause 1 of section 2 of the Municipal Court act, giving that court jurisdiction of all actions on contracts, express or implied, when the amount claimed by plaintiff exceeds $1000, against a street railway company for breach of the implied contract arising from the plaintiff having got on the street car and paid the sum of five cents, the fare demanded.

The defendant in error, Keller, by his employment of the deceased, became liable to pay to him, in case of an accident occurring to him arising out of or in the course of the employment, the sum fixed by the statute for the injury received, and also liable, in case the injury resulted in the employee's death, to pay to the beneficiary named in the statute the amount fixed by it. From this statutory duty—this obligation imposed by law—there was implied in law a promise to perform it which was contractual in its nature.

In support of the fifth proposition the defendant in error cites *Fortner* v. *Industrial Com.* 312 Ill. 327. That case gives no support to the defendant in error's proposition. In it the claimant was the wife of the respondent and the deceased was their son. He was employed by his father and was killed by a fall from a smoke-stack eighty-

five feet high, the accident arising out of and in the course of his employment. The arbitrator, on the ground of partial dependency, made the minimum award of $1650. The Industrial Commission, on review, found that the claimant was not dependent and the award was set aside. On *certiorari* the circuit court set aside the order of the Industrial Commission, made a finding of total dependency and awarded a lump sum of $3500 compensation. Upon writ of error issued out of this court the court found there was no evidence of total dependency and the judgment for the lump sum of $3500 was not authorized. In regard to partial dependency the court found that the sum paid the mother (ten dollars a week while the son's board did not cost her that much and paying for half her clothes under an arrangement with her) did not bring the case within the Compensation act or authorize the judgment—that is, that she was not partially dependent on him. It was found that the claimant was dependent upon her husband for support and there was no evidence that he did not fulfill his legal obligation. The case was therefore decided entirely on the finding of fact that Leona Fortner was not dependent upon her deceased son, either wholly or in part. The opinion states that "the substance of the judgment was that the husband, who was legally bound to support his wife and on whom she was a legal dependent,. was to support her in another way by taking money from him under the Compensation act. The insurance company was brought into the case in the circuit court, but the legal liability to make compensation, if there was any, was the liability of James W. Fortner. There was no evidence what the contract with the insurance company was, but there is no claim that it was anything more than to indemnify Fortner to the extent of any legal liability." That case, of course, was decided right. The evidence showed that the wife was supported by her husband in accordance with his legal obligation and was not dependent on her son, the deceased.

There was therefore no basis for an award, and the case was not in any respect like the present case except that the employer was the husband of the claimant. In the former case the husband was supporting his wife, and she was not supported by her son and was not dependent on her son in any way. In this case, as the plaintiff in error offered to prove, the husband did not contribute anything to her support and was not able to do so. His only income was the money he received from the city for his services in removing garbage. The expense of operating the business consumed the entire receipts, and the sons contributed to the wife's support and were her only support.

There is no principle of the common law hostile to the right of a mother to the benefit of the provisions of the Workmen's Compensation act in case of the death of her son upon whom she is dependent, caused by an accident occurring in the course of and arising out of his employment, and the right is not affected by the fact that his employer, upon whom the burden of making compensation rests, is her husband. Neither is anything in the *Fortner case, supra,* inconsistent with that right. If the husband is already adequately supporting his wife she is not dependent on anyone else. Nor is his liability or that of the insurance carrier affected by the fact that he has complied with the act by insuring his entire liability with an insurance carrier. It is to make the payment of the compensation provided for certain that the act requires the employer to furnish security.

The order of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to remand it to the Industrial Commission for a hearing on the merits of the case.

*Reversed and remanded, with directions.*

Mr. JUSTICE DeYOUNG, dissenting.